ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK _____x
Exhibit A

DERIC NELSON,

                           Plaintiff

   -against-

DAMIEM BROWN, et al.

                        Defendant.

**Affidavit
Federal Jurisdiction
JURY** *trial de novo*

RECEIVED
JUN 18 2013
PRO SE OFFICE

      On behalf of DERIC NELSON (Plaintiff), this sworn affidavit (Exhibit A), annexed to **AFFIRMATION** (Exhibit B), ''Constructive Notice to attorney **Instructions for Representation for Deric Nelson**" (Exhibit C), NOTICE OF DISHONOR AND DEFAULT (Exhibit D), New York State Department of Taxation and Finance Report (Exhibit E), Court Transcripts 4/24/2013 (Exhibit F), Court Transcripts 5/15/2013 (Exhibit G) is served upon the defendant, before UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK in regards to the claims levied against him.  The Plaintiff in this action has demands for final approval of a settlement agreement (the "Settlement") between Plaintiff and Defendant Attorney **Damien Brown**.  The Settlement received preliminary approval on May 16, 2013 (See **Exhibit D**). Now, following the plaintiff seeks final certification of the Classes for settlement, approval of the Settlement, and an award of compensation for damages incurred. Set forth is certain terms in regards to the disputes between the parties.  All facts presented in this **affidavit** are true, and accurate to the best of my knowledge.

<u>PRELIMINARY STATEMENT</u>

    1.    This serves as a civil rights action in which the plaintiff seeks relief for defendant's violation, of his rights, privileges, and immunities secured by the **First, Fourth, Fifth, Eighth, Ninth, and Fourteenth** Amendments to the **United States Constitution**, and the Constitution and laws of the **State of New York.**

    2.    The plaintiff brings this action seeking compensatory and punitive damages for defendant's violation of the plaintiff's rights afforded by the **United States** and **New York Constitution** and under the laws of **The State of New York.**

    3.    Attorney Damien Brown licensed by The State of New York acting individually and at his official capacity, jointly and severally, did cause the plaintiff Deric Nelson, to be subject to, legal misrepresentation, social, and economic losses in a conspiracy to conceal securities fraud from Federal Authorities Trust Indenture Act of 1939 (TIA), 15 U.S.C. § 77aaa through 15 U.S.C. § 77bbbb.

4.    Section 316(b) of the TIA was enacted to protect certain rights of individual bondholders to payment of principal and interest.

5.    It states: Notwithstanding any other provision of the indenture to be qualified, the right of any holder of any indenture security to receive payment of the principal of and interest on such indenture security, on or after the respective due dates expressed in such indenture security, or to institute suit for the enforcement of any such payment on or after such respective dates, shall not be impaired or affected without the consent of such holder, except as to a postponement of an interest payment consented to in paragraph (2) of subsection (a) of this section, and except that such indenture may contain a provision limiting or denying the right of any such holder to institute any such suit, if and to the extent that the institution or prosecution thereof or the entry of the judgment therein would, under applicable law result in the surrender, impairment, waiver, or loss of the lien of such indenture upon any property subject to such lien.

6.    Damien Brown violated the plaintiff civil rights, causing him economic loss when he breached his duties as representation of the plaintiff in a criminal matter before Supreme Court Of The State of New York County of Kings: Criminal Term: Part.

7.    A affirmation was submitted on behalf of DERIC NELSON dated March 29, 2013 before Supreme Court Of The State of New York County of Kings: Criminal Term: Part.

8.    Deric Nelson was falsely arrested, assaulted, battered, handcuffed and humiliated by officers in connection to allegations of Grand Larceny (Supreme Court Of The State of New York County of Kings: Criminal Term: Part/Docket No.00046-2012).

9.    On April 24, 2013 the acting Judge Joel M. Goldberg advised the plaintiff based on his pro se status that he should consult an attorney in regards to filing the proper applications before the court.

10.    At the time the plaintiff was reluctant to trust the services of a legal aid, but based on the fact that the case docket going on for more than 3 years, and numerous attempts to have a dismissal being denied he opted to contract the services of the defendant.

11.    Dated April 18, 2013 a "**Constructive Notice to attorney Instructions for Representation for Deric Nelson**" was served to Attorney Damien Brown as a binding agreement on how to properly proceed in his defense (Exhibit C).

12.     Damien Brown was an Attorney in the State of New York at the time of this incident and was contracted as a representative for the plaitiff.

13.     Damien Brown was an attorney at law prior to and when this incident occurred.

14.     Damien Brown was a representative of the plaintiff and assigned to legal matters before Supreme Court Of The State of New York County of Kings: Criminal Term: in the State of New York.

15.     Damien Brown held a position as representative as an Attorney at law making him a fiduciary to the plaintiff's best interest in the matters before the court proceedings contractually.

16.     Damien Brown proceeded to Breach the plaintiff's contract during his representation by not motioning specific pre-trail conferences asserted by way of the plaintiff's previous affirmation.

17.     The plaintiff Deric Nelson asserted his right to due process and equal protection were being violated by Kings County District Attorney Detectives during the time of his arrest in connection to false allegations of Grand Larceny made against him.

18.     The plaintiff demanded a Mapp/Dunaway, Huntley, and Sandoval hearing be requested by Notice of Motion submitted by Attorney Damien Brown on his behalf to protect his interest in the property in question.

19.     The demands for a request were all based on NYS CPL and were absolute remedies in proving that the plaintiff was violated of certain rights, privileges, and immunities afforded to him by the United States Constitution, and the Constitution and laws for the State of New York.

20.     Damien Brown failed to represent the plaintiff's best interest during the course of his contracting as the plaintiff's legal representation.

21.     Damien Brown breached said contract in an attempt to conceal previous pleadings he asserted in regards to Mortgage Backed Securities fraud.

22.     By attempting to have Deric Nelson stand trial without a jury of his peers present Damien Brown assisted The People of the State of New York to avoid them from holding any liabilities based on the property in question.

23.     Being valued at over $1,000,000 by the New York State Department of Taxation and Finance the plaintiff asserted that the false allegations against him were Federal Questions raised by his accusers.

24.     The aforementioned facts where asserted by County of Kings District Attorney during the course of the proceedings in the form of a New York State Department of Taxation and Finance report on the value of the property in question.

25.     The New York State Department of Taxation and Finances property assessment was not asserted initially by the plaintiff, but was made by The People of the State of New York, in the pleadings submitted by the County of District Attorney.

26.     The Notice Of Dishonor And Default served to Damien Brown gave him 72 hours to move the proceedings to a Federal Venue on behalf of the plaintiff (See **NOTICE OF DISHONOR AND DEFAULT (Exhibit D).**

27.     The Notice Of Dishonor And Default also stated that if the commands asserted to Damien Brown were not met that he must compensate the plaintiff at a sum no less than $1,000,000.

28.     The sum of $1,000,000 was based upon the New York State Department of taxation and finances assessment of the value of the property.

29.     The plaintiff made Damien Brown aware that he had his character defamed by his previous business partner Attorney Bernard Shafron in an attempt to have the property in question seized in a court ruling and then have false criminal charges placed against him by using his power of attorney to falsify records.

30.     Damien Brown was fully aware at all times based on the plaintiff's case file that the issues of mortgage back securities fraud could place him at jeopardy with the accusers and opted to knowingly assist them against the plaintiff.

31.     Plaintiff seeks compensatory and punitive damages.  Plaintiff also seeks all other awards, fees and cost, and for such other and further relief as a Federal Court seems just and proper.

<u>JURISDICTION</u>

32.     Federal Court has jurisdiction over the claims of the plaintiff under **Trust Indenture Act of 1939 (TIA), 15 U.S.C. § 77aaa through 15 U.S.C. § 77bbbb** pursuant to **28 U.S.C. Section 1331 and Section 1342(3).**

33.     Federal jurisdiction over the proceedings will be invoked pursuant to the provisions of **Title 28, United States Code Section 1343(3) and (4),** with a suit in equity which is authorized by law, **Trust Indenture Act of 1939 (TIA), 15 U.S.C. § 77aaa through 15 U.S.C. § 77bbbb** pursuant to **28 U.S.C. Section 1331 and Section 1342(3),** to be brought to redress the deprivation of rights, privileges, and

4

immunities secured by Constitution and laws of the United States or by any Act of Congress providing for equal rights of citizens.  The rights here sought to be redressed are rights guaranteed by the due process and equal protection clauses of the **Fourteenth Amendment** to the Constitution of the United States and **Title 42, United States Code, Section 1981** as hereinafter more fully appears and of the State of New York.

34.     A notice of claim was timely filed by the plaintiff, with respect to his cause of actions which occurred on April 18, 2013 and May 12, 2013 setting the forth the time when, the place where and the manner in which the incidents occurred.

35.     Notice of claim was presented within ninety (90) days after the causes of action accrued and more than twenty one (21) days have elapsed since such presentation and the defendants have wholly failed to adjust or make payment thereon.

36.     This action is being commenced within the time limitations set forth in all applicable Federal and State laws and Statutes.

### VENUE

37.     The proper venue for the defendant's claims are in a United States District Court pursuant to 28 U.S.C. Section 1391(b)(2), in that County of Kings, City of New York, The State of New York and the places at which the events occurred are in the Federal Courts jurisdiction.

### JURY DEMANDS

38.     The plaintiff demands a trial by jury on each and every one of his claims.

### PARTIES

39.     Plaintiff Deric Nelson is and was citizens of the United States, and is and was at all times relevant herein residents of the State of New York having his residence at 55 South 25th Street, Wyandanch, New York.

40.     Defendant is an attorney at law and is authorized by law to maintain his offices that act as its agents and for which he is ultimately responsible based on the laws of the State of New York.

41.     Damien Brown has a principal office at 26 Court St Suite 603, Brooklyn, NY.

42.     Damien Brown is responsible for the practices, policies, and customs of the Law Offices of Damien Brown, as well as the representation, fiduciary trust, supervising, controlling, retaining and disciplining of his offices.

43.     The defendant Damien Brown, is and was, at all times relevant to this complaint, the former attorney of the plaintiff and was a policy maker for purposes of The Law Offices of Damien Brown's policies, practices and customs.

44.     As a former attorney of the plaintiff Damien Brown, at all times relevant to this complaint, was involved in the incidents on that took place on May 12, 2013.

45.     At all times relevant herein, Damien Brown violated clearly established constitutional standards under the First, Fourth, Fifth, Eight, and Fourteenth Amendments of which a reasonable attorney under his or her respective circumstance would have known not to be so violative.

## STATEMENT OF FACTS

47.     Claimant Deric Nelson is an African American black male.

48.     In an affirmation dated March 29, 2013 the plaintiff submitted a writ of defense to false allegations of Grand Larceny, and falsifying county documents levied against him by The People of the State of New York in the County of Kings.

49.     Based upon the pro se status of the plaintiff the acting Judge Joel M. Goldberg presiding over the case advised him that he should seek the advice of an attorney in regards to submitting proper Motions and supporting documentation.

50.     Based upon the on going dispute and the amount of time that the plaintiff was being held against his best wishes by the charges against him he was given the advice of counsel from Attorney Damien Brown.

51.     Based upon the severity of the false charges against him and the amount of years that the prosecution could not move to trial the plaintiff served Damien Brown a ''**Constructive Notice to attorney Instructions for Representation for Deric Nelson**'' **(Exhibit C).**

52.     Based upon the previous pleadings submitted by the plaintiff in pro se status he was aware of various pre-trial hearings that could be utilized to remedy his ongoing disputes with The People of the State of New York in regards to the validity of the claims against him.

53.     The plaintiff instructed Damien Brown that he was looking to have pre-trial hearings in order to prove beyond a reason of a doubt his civil rights had been violated by various officers in the City of New York and the County of Kings during his arrest in connection with the charges against him.

54.     The plaintiff demanded that as his Attorney Damien Brown honor the aforementioned 'Constructive Notice to attorney Instructions for Representation for Deric Nelson" (Exhibit C) by Motioning the Court for a Mapp/Dunaway, Huntley, and Sandoval hearing.

55.     The plaintiff also demanded that a hearing be held to determine whether the prosecution had violated NYS CPL 30.30 in regards to the fact that the proceedings had carried on for over 3 years with no pre-trial hearings or trial.

56.     On April 24, 2013 while at Supreme Court Of The State of New York County of Kings: Criminal Term: Attorney Damien Brown ignored the demands of the plaintiff by agreeing to have him proceed with a trial without a jury of his peers.

57.     The plaintiff openly contested that it was not in his best interest to proceed without having the pre-trial hearings previously demanded.

58.     Damien Brown based on his knowledge of the case docket file and the plaintiff asserting certain Constitutional Protections caused controversy in regards to the property in question.

59.     Damien Brown was aware that while in Pro Se status the plaintiff had asserted writs challenging the prosecution on why the Federal Government was not notified based on the properties value.

60.     The property assessed by the New York Department of Taxation and Finance was valued at over $1,000,000.

61.     Based upon ongoing disputes over the rightful ownership of the said property the plaintiff asserted that if he was falsely charged with Grand Larceny that it proved beyond a reason of a doubt that tax fraud had taken place.

62.     The aforementioned fact was proven not by the plaintiff making hearsay allegations but by his accusers using the Department of Taxation and Finances report as an accusatory instrument to prosecute him for a crime he did not commit.

63.     The power of attorney of a Bernard Shafron a previous bank attorney of the plaintiff led to the seizure in a default against Deric Nelson in regards to said property.

64.     The Plaintiff made Damien Brown aware that State legislation was being used to abrogate his rights to property based on race in a conspiracy to seize the ownership of the property and falsely have him convicted in criminal charges.

65.     Based upon Damien Brown's representation being used to assist his accusers the plaintiff served the defendant a **NOTICE OF DISHONOR AND DEFAULT (Exhibit D)** dated May 12, 2013.

66.     The aforementioned default Notice demanded Damien Brown as a New York State Attorney to contact a higher Federal Authority on the plaintiff's behalf but also that if he failed to do so the plaintiff would seek a monetary compensation of $1,000,000.

67.     Based upon the value of the said property and the fact that the plaintiff had evidence to prove that Bernard Shafron had used power of attorney to seize said property the amount sought by the plaintiff for Damien Browns failure to protect the plaintiff's said interest is meritorious.

68.     Without a reason of a doubt a mortgage backed security was seized, and then assessed by the New York State Department of tax and Finance at over $1,000,000 ((**Exhibit E**).

69.     Based upon the value of the said property the plaintiff was well aware that criminal charges of Grand Larceny and falsifying records warranted a thorough investigation into falsified financial filing statements made on behalf of Bernard Shafron, and then assessed by New York State Department of taxation and finance.

70.     On May 15, 2013 the plaintiff appeared again at Supreme Court Of The State of New York County of Kings: Criminal Term: at which point Damien Brown in breach of said Notice of Default again agreed on the record to have the plaintiff proceed in a trial without the presence of a jury of his peers.

71.     Deric Nelson sustained further injuries from State of New York by being forced to proceed after over 3 years of no pre-trial hearings or trial litigation in violation of NYS CPL 30.30 causing him discomfort and further economic hardship.

72.     Further hardship economically can be proven by the existence of this claim.

73.     Numerous attempts were made by the plaintiff to have Damien Brown sit down to discuss strategies in having his rights honored and all attempts were failed due to his conspiracy to conceal securities fraud and not be liable to the plaintiff's accusers as a attorney licensed in the State of New York.

8

74. The City of New York Office of the Comptroller responded to the initial claim of the plaintiff's civil rights being violated back on June 6, 2012 by way of a Michael Aaronson a representative for the Comptroller.

75. Based upon the facts and the lack of any disciplinary action made by State of New York or City of New York and the unlawful attempts by the plaintiff to have Damien Brown make note of this publically, a conspiracy has taken place to deny compensatory damages that may be awarded to the plaintiff.

76. The plaintiff was a victim to police brutality.

77. The claimant Deric Nelson was detained without probable cause and it was Damien Brown's duty contractually to see that the defendants demand for pre-trial hearings was honored.

78. The defendant holds liability to the plaintiff for negligence and for his failure to cure the matters before they reached the level were he would be placed in further jeopardy to the officials involved with the false charges levied against the plaintiff.

## AS AND FOR A FIRST CAUSE OF ACTION
## FOR VIOLATIONS OF CIVIL RIGHTS

79. Plaintiff repeats each and every allegation contained in paragraphs "1" through "78" as if fully set forth herein.

80. The defendant Damien Brown was acting as an agent, servant and/or employee of Deric Nelson.

81. Damien Brown was acting within the course and scope of his employment.

82. As a direct and proximate result of Damien Brown's actions, the plaintiff was deprived of rights, privileges, and immunities secured to him under the Constitution and laws of The State of New York and United States, including but not limited to his rights under the Fourth, Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. Section 1981 in regards to contracts.

83. By reason of the aforementioned the plaintiff suffered economic loss, great mental anguish, and was deprived of his constitutional rights.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR VIOLATION OF PLAINTIFF'S CIVIL RIGHTS

84.     Plaintiff repeats each and every allegation contained in paragraphs "1" through "83" as if fully set forth herein.

85.     All of the acts and omissions by Damien Brown were carried out pursuant to overlapping policies and practices of law offices of Damien Brown which were in existence at the time of the conduct alleged herein and were engaged in with full knowledge.

86.     Damien Brown, as a agent, servant and employee, authorized, sanctioned and/or ratified wrongful acts; failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

87.     The actions of Damien Brown resulted from and were taken pursuant to the following de facto policies and/or well settled and widespread customs and practices of the Law offices of Damien Brown, which were and are implemented by Damien Brown Esq:

(a)     Damien Brown allowed a conspiracy to take place without consequence - i.e. without fear of reprimand, discipline or even re-training by the bar association.

(b)     Damien Brown, engaged in systematic and ubiquitous perjury, both oral and written, to cover-up constitutional and state law violations committed against civilians by him or fellow officers, and/or superiors.  He did so with the knowledge and approval of the County of Kings who all:

(i)     tacitly accept and encourage a code of silence wherein private attorney's refuse to report other officers misconduct or tell false and incomplete stories designed to cover for and/or falsely exonerate accused county officers, state officers; and

(ii)    encourage and/or fail to report officers for "testifying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in order to cover-up civil rights violations perpetrated by themselves or fellow officers, and/or superiors against those civilians; and

(c)     Damien Brown with the knowledge, approval and encouragement of State officials conspired to conceal fraud concerning the constitutional rights of individuals in the States care and custody.

88.     The law offices of Damien Brown established a custom, policy and/or practice of encouraging, approving and/or tolerating the County of Kings use of excessive force and acts of misconduct against civilians, especially those civilians who are of African American descent and of a different religious faith, and subsequent attempts to conceal such actions by failing to notify a superior authority.

89.     Damien Brown was deliberately indifferent to the use of improper procedures in the detention and arrest of civilians, and especially those civilians of African American descent with a different religious belief, and established a custom, policy and/or practicing of encouraging, approving and/or tolerating the use of said improper procedure by County of Kings and subsequent attempts to conceal such actions by failing to adequately notify a superior authority in the Federal Government.

90.     Damien Brown and his abuse of Constitutional protections would not have existed but for said use of his official power.

91.     The law offices of Damien Brown sanctioned the policy and practices heretofore described through his deliberate indifference to the effect of such policy and practices upon the constitutional rights of the plaintiff and others similarly situated.

92.     The defendant's motivation was in contravention of the United States Constitution and the Constitution of the State of New York.

93.     The law offices of Damien Brown had a policy of encouraging abuse and assaults or of ratifying the same by systemic deficiencies in notifying the Federal Government or in the investigation of complaints against State officials.

94.     The foregoing acts, inaction, omissions and systemic failures are customs and policies of the Law offices of Damien Brown to believe that determination of the rights to use force and the amount of allowable legal force was within County of Kings discretion and that complaints of the use of excessive force would not be honestly or properly investigated, with the foreseeable result that officers would be likely to be sanctioned.

95.     The existence of the foregoing unlawful de facto policies and/or well settled and widespread customs and practices is known to, encourage and/or

condoned by supervisory and policy making officers and officials of County of Kings including the Supreme Court Of The State of New York County of Kings: Criminal Term.

96.     Despite knowledge of such unlawful de facto policies, practices and/or customs, these supervisory and policy making officers and officials of County of Kings including its Supreme Court Of The State of New York County of Kings: Criminal Term have not taken steps to terminate these policies, practices and/or customs or otherwise properly notify higher authorities with regard to constitutional and statutory limits on the exercise of their authority, and insert sanctions and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in their care or custody.

97.     As a result of the aforesaid violation of plaintiff's rights, he sustained injuries and damages previously described in this affidavit.

98.     As a direct and proximate result of the aforesaid acts, inaction, omissions and systemic failures Damien Brown was negligent causing economic and social losses to the defendant.

99.     As a result of the foregoing, plaintiff seeks compensatory and punitive damages.

## AS AND FOR A THIRD CAUSE OF ACTION
## FOR VIOLATION OF 15 U.S.C. § 77aaa THROUGH 15 U.S.C. § 77bbbb

100.     Plaintiff repeat and incorporates by reference each and every allegation contained in paragraphs "1" through "99" as if fully set forth herein.

101.     Damien Brown is liable under 15 U.S.C. § 77aaa through 15 U.S.C. § 77bbbb for conspiring to violate claimant's rights guaranteed by the aforementioned amendments to the constitution.

102.     Damien Brown conspired, planned and agreed to treat the plaintiff in the manner previously described for the purpose of depriving them, either directly or indirectly, of equal protection of the laws and/or of equal privileges and immunities under the United States Constitution and the New York State Constitution.

103. The actions and conduct taken against the plaintiff was done in furtherance of a conspiracy to bar the prosecution from liability in regards to mortgage backed securities fraud.

104. Financial filing statements filed on behalf of the property and the allegations of falsifying public regards in regards to property and no evidence that any of the parties contacted the Federal Government or the I.R.S. in regards to potential false financial filing statements proves beyond a reason of a doubt Damien Brown violated **15 U.S.C. § 77aaa through 15 U.S.C. § 77bbbb**.

105. As a result the plaintiff suffered emotional harm, economic loss and was subject to cruel and unusual punishment in violation of the 8th Amendment and was deprived of his constitutional rights as previously described.

106. The defendant's conspiracy was motivated by the plaintiff's race based on his religious diversity with the defendant and his accusers in the case docket in Supreme Court Of The State of New York County of Kings: Criminal Term.

## AS AND FOR A FOURTH CAUSE OF ACTION
## NEW YORK STATE CONSTITUTIONAL VIOLATIONS

107. Plaintiff repeats and incorporates by reference each and every allegations contained in paragraphs "1" through "106" as if fully set forth herein.

108. The aforementioned conduct of Damien Brown violated the protections guaranteed to plaintiff by the New York State Constitution, Article 1, Sections 6, 8, 11, and 12 including but not limited to the right to be free from unreasonable seizure of his person, including excessive force.

109. The law offices of Damien Brown deprivation of the plaintiff's rights under New York State Constitution resulted in damages suffered by the plaintiff.

## AS AND FOR A FIFTH CAUSE OF ACTION
## NEGLIGENCE

110. Plaintiff repeats each and every allegation contained in paragraphs "1" through "109" as if fully set forth herein.

111. The law offices of Damien Brown, its agents, servants or employees acted negligently, carelessly and recklessly in the care and treatment given to the plaintiff

during the case docket on file in Supreme Court Of The State of New York County of Kings: Criminal Term.

112.   Damien Brown negligently failed to use due care in performance of his duties in that he, among other negligent acts, failed to perform his duties as a reasonably prudent and careful attorney would have done under similar circumstances.

113.   The negligent actions of Damien Brown directly and proximate caused the plaintiff damages.

## AS AND FOR A SIXTH CAUSE OF ACTION
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

114.   Plaintiff repeats each and every allegation contained in paragraphs "1" through "113" as if fully set forth herein.

115.   The actions Damien Brown were outrageous and beyond any norms acceptable to Deric Nelson's religious beliefs.

116.   Damien Brown with the desire and intent to cause the plaintiff emotional distress acted under circumstances known to him, which made it substantially certain that he would cause such emotional distress.

117.   Damien Brown acted with utter disregard of the consequences of his actions.

118.   As a result of the aforesaid, the plaintiff sustained injuries and damages previously described in this complaint, including intentional infliction of emotional distress.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

119.   Plaintiff repeats each and every allegation contained in paragraph "1" through "118" as if fully set forth herein.

120.   Damien Brown by his aforementioned action negligently caused the Plaintiff to suffer mental and emotional distress.

## PUNITIVE DAMAGES

121.    Plaintiff is seeking punitive damages against Damien Brown.

WHEREFORE, the plaintiff demands the following relief jointly and severally against the defendant:

(a)    A declaration that he violated the "**Constructive Notice to attorney Instructions for Representation for Deric Nelson**";

(b)    Compensatory damages for the economic losses and emotional injuries suffered by the plaintiff. By reason Damien Brown's unlawful and unjustified conduct, in an amount just and reasonable and in conformity with the evidence at trial based on **NOTICE OF DISHONOR AND DEFAULT (Exhibit D)**;

(c)    Punitive damages against Damien Brown;

(d)    For such other, further and different relief as is just and proper under the circumstances.

Dated June 17, 2013

I Am:  _Deric Nelson_ - (Pro Se) All Rights Reserved Without Prejudice.

DERIC [NELSON]

P.O. BOX 654

HICKSVILLE NY 11802

## Verification

For the knowing of the all of the men and women of the Deric-Nelson duly affirming, deposing, and saying of the all of the presents of the stating-herein with the first-hand-knowledge of the True, correct, and complete: facts with the full-disclosure under penalty-of perjury.

For the knowing of the all of the men and women of the Deric-Nelson duly attesting and verifying of the all of the presents of the stating-herein with the first-hand-knowledge of the True, correct, and complete: facts with the full-disclosure under the penalty-of-perjury.

_Deric Nelson_

AR: Deric Nelson - Affiant

By the affirming before-me on the _18 April 2013_ in the _Suffolk_ County in the New-York-State.

Notary-Public

My Commission Expires on _02 30/15_

AMARISH N. KACHHY
Notary Public, State of New York
No. 49C16x Qualified in Suffolk County
Commission Expires March 30 _7 30/15_

CRIMINAL TERM ARR/MOT
SUPREME COURT KINGS

ATTENTION: COUNTY OF KINGS, CHIEF JUDGE HON. JONATHAN S. LIPPMAN, HON.
ANN M. DONNELLY J.S.C., DISTRICT ATTORNEY CHARLES J. HYNES

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: CRIMINAL TERM: PART
------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK

                                                    Docket No.    00046-2010

                        -against-

DERIC NELSON,

                                        Defendant.
------------------------------------------------------------x

## AFFIRMATION

On the behalf of DERIC [NELSON] (Defendant), under penalty of perjury I
hereby affirm that the statements herein are true, except as to those facts stated
upon information and beliefs that are believed to be true.  This affirmation is
annexed to the Affidavit of Polaris, exhibits, and in support of the relief requested in
Notice of Motion.


## BACKGROUND

1.       On December 28, 2009 Kings County District Attorney Detectives
arrested Deric [Nelson] For P.L. 155.42 (Grand larceny in the first degree) P.L.
175.10 (Falsifying business records in the first degree) P.L. 175.30 (Offering a false
instrument for filing in the second degree).

2.       On December 29, 2009 Deric [Nelson] was released on his own
recognizance from Criminal Court Kings County.


## SUPPRESSING STATEMENTS

3.       DERIC [NELSON] now moves to suppress evidence of the alleged
statements attributable to him. CPL 710.60

4.       Any statements alleged to have been made or not by DERIC [NELSON]
were the result of an illegal seizure, taken during a custodial interrogation, obtained

OFFICE OF
DISTRICT ATTORNEY
KINGS COUNTY
Clerk's office 4/5/13 3:25PM

coercion, without administration of Miranda warnings, after the police had already agreed not to speak to the defendant concerning the case, and without knowing, voluntary and intelligent waiver of the defendant's <u>Miranda</u> rights.   This was all done in violation of DERIC [NELSON]'S State and Federal Constitutional rights.

5.     No sworn allegations of fact are necessary and a hearing must be held 710.60.


## OBSERVATIONS AND EVIDENCE

6.     Deric [Nelson] was not violating any laws when arrested by Kings County District Attorney Detectives.  His seizure was done without probable cause, reasonable suspicion or articulable basis.  Deric [Nelson] maintains that he was not violating in New York State Laws.  Deric [Nelson] was interrogated and then arrested without any explanation.

7.     Furthermore the defendant asserted to the officers before being seized that he waived none of his rights protected by the Unites States Constitution or the Constitution of the State of New York.

8.     Since the law is well settled that any warrantless search and seizure is per se unreasonable, and thus unconstitutional, the heavy burden rest on the People to demonstrate by clear and convincing evidence that one of the carefully delineated exceptions to the warrant clause exist.  See <u>People v. Baker</u>, 23 N.Y. 2d 319; <u>People v. Mahoney</u>, 16 A.D.2d 107, <u>Davis v. Mississippi</u>, 393 U.S. 821; <u>Crews v. United States</u>, 440 U.S. 907.

9.     Under the aforementioned facts all evidence stemming from the illegal seizure should be suppressed or in the alternative a Mapp/Dunaway hearing should be held as it is well settled law that the mere interrogation of the defendant after he expressed a right to be set at liberty is in and of itself a "seizure, within the meaning of the 4th Amendment of the U.S. Constitution and Article 12 of the New York State which requires  "reasonable suspicion."

10.     An individual's Fourth Amendment rights under the Constitution of the United States and New York State must be protected by the courts.  To deny a defendant a pre-trial hearing on the issues of being seized in violation of the Fourth Amendment rights, as well as his State Constitution Rights would require a defendant to go through an entire jury trial to ascertain whether there was a basis

for police in the seizure of the defendant.  This not only causes a citizen to incur extensive trial expenses, but also, more importantly, is an uneconomical use of the court's time.  The only way to suppress a person's seizure under the U.S. Constitution and the State Constitution is by way of a pre-trial hearing.

11.     In view of the sworn allegations of facts set forth in this affirmation it is apparent that the District Attorney Detectives in the instant case lacked reasonable suspicion to seize the defendant, therefore it is submitted that any statements made by the defendant after the seizure, as well as any testimony pertaining to any observations of the defendant made by the police, as well as the alleged refusal be suppressed as stemming from the illegal seizure, or in the alternative, order that hearing be conducted prior to trial at which time evidence would be produced and findings of fact made essential to the determination thereof. (Mapp hearing). CPL Section 710.60 (4).


### PRIOR CRIMINAL HISTORY AND BADS ACTS


12.     The defendant asserts that he has no criminal history that substitutes him every accepting the acts committed against him by John Doe District Attorney Detectives.

13.     Any such evidence is admissible solely to impeach the defendant's credibility People v. Sandoval, 34 N.Y.2d 171.

14.     The defendant bears the burden of demonstrating the prejudicial effect of admission of evidence regarding prior convictions and misconduct outweighs its probative worth as the issues of credibility.

15.     The defendant has no compilation of any prior convictions and his conduct outweighs the probative worth of the Peoples credibility.

16.     The defendant's request for disclosure and for a hearing to determine the scope of if the prosecution's cross-examination of the defendant is based upon his desire to testify on his behalf, and pursuant to CPL Section 240.43.

17.     Only with full disclosure by the prosecutor and the trial court's advanced ruling regarding the scope of cross-examination of the defendant can decide to take the witness stand.

3

WHEREFORE, I COMMAND that an Order be entered consistent with the foregoing, or that a hearing is ordered to determine the issues asserted herein.

Dated:   ~~March 29,~~ 2013
                           DN

                           April 4, 2013
I Am: _Deric_____ [ Nelson (Pro Se) - All Rights Reserved Without Prejudice.

DERIC [NELSON]

P.O. BOX 654

Hicksville NY 11802

Sworn to before me this

_4_ day of April, 2013

_____

NOTARY PUBLIC

KAMAL P. SONI
Notary Public, State of New York
No. 01SO6089949
Qualified in Kings County
Commission Expires March 31, 2015

4

Date: April 18, 2013                    Document-Number/Claim-Number: DN051813

**To**: Damien Brown, Esq

**From**: Deric Nelson

**Subject: Instructions to Attorney**

Kings-County      )
                  ) A.S.:
New-York-State   )

### Constructive Notice to attorney
### Instructions  for Representation for Deric Nelson

For the knowing of the all of the men and women of the Deric-Nelson hereinafter the Affiant duly affirming, deposing, and saying of the all of the presents of the stating-herein with the first-hand-knowledge of the True, correct, and complete-facts with the full-disclosure under the penalty-of-perjury.

This Document shall be a permanent part of Damien-Brown squire, records the Attorney of record in the matter of [STATE-OF-NEW-YORK: KINGS-COUNTY: STATE-SUPREME-COURT: DOCKET: 0046-2010]. This Document has been sent to Damien-Brown, Esquire (hereinafter Attorney and/or Lawyer) for the following reasons; the Affiant has repeatedly attempted to contact Damien-Brown, Esquire on several occasions including but not limited to emails and phone calls and visits to attorneys office as to the preparations and updates and/or progress of the aforementioned matter and as of the date of this document the Attorney has only responded back once in a phone call to the Affiant.

This document is sent to the Attorney to instruct the Attorney as to how the Affiant wants to proceed in the matter of [STATE-OF-NEW-YORK: KINGS-COUNTY: STATE-SUPREME-COURT: DOCKET: 0046-2010] so that there shall not be a misunderstanding as to the direction and/or actions or lack thereof by the Attorney.  This Document is not to harass and/or stall, delay the aforementioned matter and further the Affiant states that all instructions and/or statements from the Affiant to the Attorney are made in **Good Faith** and are not **Frivolous**. The Affiant demands to participate in his own defense in regards to the matter of [STATE-OF-NEW-YORK: KINGS-COUNTY: STATE-SUPREME-COURT: DOCKET: 0046-2010].  The Affiant acknowledges the Attorney as having superior Knowledge of the Law and that is why the Affiant accepted the Attorney to represent the Affiant in the aforementioned matter.  The Affiant also realizes that at the end of the day if convicted of the alleged charges in this mater it shall be the Affiant that suffers not the Attorney and therefore the Affiant shall seek the advice of all available legal options in regards to this matter form the Attorney, but ultimately it shall be the Affiant that decides Legal course the Attorney shall follow if it is within the bounds of the Law, and further the Affiant expects the Attorney to represent the Affiant with **Zeal, Vigor** and **Zest** at all times in regards to this matter.  The Affiant shall research and follow up all applicable options that the Attorney present to the Affiant in regards to this matter and further the affiant shall research some applications of law that may apply to this matter and bring it to the Attorney attention in the event that the Attorney has not mentioned it to the Affiant.  The

Affiant states that any instruction and/or statement that is included herein the Attorney shall have the ability to decline to pursue provided that the Attorney can show within the law how the instruction is not allowed further what evidence is relied upon to show Bad faith and or frivolous actions, failure by the Attorney to challenge the instructions and/or statements in the above described manner in written form sent by certified mail to the Affiant address within 10 calendar days of receiving any document of instruction from affiant. Failure by the Attorney to Challenge the instructions and/or statements shall be deemed to be that all instructions are permissible and actionable by the Attorney in this matter and that all statements are unrebutted by the Prosecutor and/or the Court in the matter of [STATE-OF-NEW-YORK: KINGS-COUNTY: STATE-SUPREME-COURT: DOCKET: 0046-2010] and further that there are no Frivolous and/or Bad Faith issues raised by the Affiant.

## Definitions

Legal-counsel = including without the limiting unto the appearances, motions, filings, responses, interview of witnesses, seeking exculpatory evidence, private investigator for lead verification, giving of expert advice, providing arguments and counter arguments, negotiate any settlements, et.al

## Statement Of The Un-rebutted-Facts

1. For the record, Deric-Nelson, hereinafter Affiant, did accept the counsel of Damien-Brown, Esquire, hereinafter Counsel on or about April, 2013 for the providing of the legal-counsel unto the Affiant.

2. For the record, Counsel was taken by Affiant and he was cajoled into doing so, by NYS Supreme Court Kings County. If affiant did not take council NYS Supreme Court(Kings County) was going to make affiant go to trial without giving affiant his Pre-trial hearings, which would be a denial of affiants' right of Due Process.

3. For the record, Affiant offered Attorney a contract to sign to protect all of Affiants rights. Even though lawyer did not sign contract before his services were forced onto affiant, Affiant does accept services of attorney in good faith and in-good-standing on the terms of the contract

4. For the record, Affiant has a reasonable-expectation for the Counsel providing the vigorous legal-counsel, securing the Affiant's: rights and protections including however not limiting unto United States of America Constitution, New York State Constitution, STATE OF NEW YORK CRIMINAL PROCEDURE LAW and PENAL LAW, STATE OF NEW YORK CIVIL PRACTICE LAWS AND RULES, STATE OF NEW YORK GENERAL MUNICIPAL LAW, STATE OF NEW YORK GENERAL OBLIGATIONS LAW, FEDERAL RULES OF CIVIL PROCEDURE, and FEDERAL CRIM INAL CODES AND RULES using the, with zeal unto the Affiant regarding the matter = [STATE-OF-NEW-YORK: KINGS-COUNTY: STATE-SUPREME-COURT: DOCKET: 0046-2010].

5. For the record the Affiant was not invited to the Grand Jury concerning the indictment in [STATE-OF-NEW-YORK: KINGS-COUNTY: STATE-SUPREME-COURT: DOCKET: 0046-2010]. The Grand Jury hearing in panel to hear testimony and evidence in the aforementioned matter was convened on/or about (Jan-2010). The Affiant further states that Affiant did not waive this right to give testimony and/or evidence in this matter.

6. For the record the Affiant has not had the representation of Counsel for the beginning several months of the matter [STATE-OF-NEW-YORK: KINGS-COUNTY: STATE-SUPREME-COURT: DOCKET: 0046-2010] from (April-.2010) through Feb-2012) and the Affiant has not granted any continuances and/or adjournments in the aforementioned matter. No one including but not limited Lawyer/Attorney and/or any other agent had the right obligation and/or the Authority to grant any adjournments and/or continuances in the aforementioned matter during the aforementioned time periods.

7. For the record the Affiant was not given the opportunity to proceed with discovery in the matter of [STATE-OF-NEW-YORK: KINGS-COUNTY: STATE-SUPREME-COURT: DOCKET: 0046-2010]. The Affiant relied upon the expert advice of an Advisor Robert Knicholson that was appointed to the Affiant by the Court as advisor. The Affiant states that the Affiant request the proper procedure to get certain evidence that was not in the Prosecutions possession and other evidence gathering processes as was not given any information to that regard by the Advisor. The Affiant did request from the Advisor to give information to the Affiant as to what procedure should be followed by the Affiant in order to avail the Affiant of that due process right.

8. For the record the Affiant was not the opportunity to challenge certain evidence and information and/or statements at pre-trial hearings in the matter of [STATE-OF-NEW-YORK: KINGS-COUNTY: STATE-SUPREME-COURT: DOCKET: 0046-2010], which could have precluded certain evidence. The advisor did give the Affiant any information and/or any instruction as to what the Affiant needed to complete to make a pre-trial hearing on the challenging of the evidence. The Affiant did request from the Advisor to give information to the Affiant as to what procedure should be followed by the Affiant in order to avail the Affiant of that due process right.

9. For the record the Affiant **Bona Fide Signature** does not appear on any instruments that the Prosecution has present as evidence in the matter of [STATE-OF-NEW-YORK: KINGS-COUNTY: STATE-SUPREME-COURT: DOCKET: 0046-2010].

10. For the record the Affiant has not made any statement that the Signature that appears on the documents that were placed on the city registry as a conveyance, transfer, deed, title, and mortgage in the matter of [STATE-OF-NEW-YORK: KINGS-COUNTY: STATE-SUPREME-COURT: DOCKET: 0046-2010] was in fact the Signature of the Affiant.

11. For the record the Affiant has called your office on these dates: 4.10.13, 4.12, 4.16, 4.17, and came to your office on 4.12.13, and 4.18.13. With none of these times being able to talk to you about this case.

12. For the record the affiant Would like a copy of the paper work from the District Attorneys' office (Prosecutor) that said they had were ready to goto trial.

13. For the record Affiant instructs Attorney to set up all pre-trial hearings that defendant is entitled to, so he can question, district attorney detectives who violated affiants rights, throw out and suppress evidence, and have a character reference pre-trial. Affiant request Hearings that include but not limited to Mapp, Dunaway, Singer, and Huntley Hearings. Affiant would also like to discuss with attorney some Rules and motions such as Omnibus motion, Rosario, Miranda, Simon, and Sorge Rules, along with the Wong Sun Doctrine which also needs to be discussed. Affiant insist on being able to help with the questions and questioning of people in these hearings.

14. For the Record Attorney does not have permission to remove any Motions or Writs that affiant has put in on the record. Attorney also does not have permission to put in any Motions or Pleas without Affiants written permission and can only be done with his permission and knowledge.

## Instructions to the Attorney

The Attorney is hereby instructed to do the following:

A) File a motion pursuant to the Speedy Trial act to have the matter of [STATE-OF-NEW-YORK: KINGS-COUNTY: STATE-SUPREME-COURT: DOCKET: 0046-2010] to have the aforementioned matter dismissed for the failure of the Prosecutor to prosecute this matter timely pursuant to the Speedy Trial Statute. § 30.30 Speedy trial; time limitations.
1.  Except as otherwise provided in subdivision three, a motion made pursuant to paragraph (e) of subdivision one of section 170.30 or paragraph (g) of subdivision one of section 210.20 must be granted where the people are not ready for trial within:
(a) six months of the commencement of a criminal action wherein a defendant is accused of one or more offenses, at least one of which is a felony;
(b) ninety days of the commencement of a criminal action wherein a defendant is accused of one or more offenses, at least one of which is a misdemeanor punishable by a sentence of imprisonment of more than three months and none of which is a felony;
(c) sixty days of the commencement of a criminal action wherein the defendant is accused of one or more offenses, at least one of which is a misdemeanor punishable by a sentence of imprisonment of not more than three months and none of which is a crime punishable by a sentence of imprisonment of more than three months;
(d) thirty days of the commencement of a criminal action wherein the defendant is accused of one or more offenses, at least one of which is a violation and none of which is a crime.
2. Except as provided in subdivision three, where a defendant has been committed to the custody of the sheriff in a criminal action he must be released on bail or on his own recognizance, upon such conditions as may be just and reasonable, if the people are not ready for trial in that criminal action within:
(a) ninety days from the commencement of his commitment to the custody of the sheriff in a criminal action wherein the defendant is accused of one or more offenses, at least one of which is a felony;
(b) thirty days from the commencement of his commitment to the custody of the sheriff in a criminal action wherein the defendant is accused of

one or more offenses, at least one of which is a misdemeanor punishable by a sentence of imprisonment of more than three months and none of which is a felony;

(c) fifteen days from the commencement of his commitment to the custody of the sheriff in a criminal action wherein the defendant is accused of one or more offenses, at least one of which is a misdemeanor punishable by a sentence of imprisonment of not more than three months and none of which is a crime punishable by a sentence of imprisonment of more than three months;

(d) five days from the commencement of his commitment to the custody of the sheriff in a criminal action wherein the defendant is accused of one or more offenses, at least one of which is a violation and none of which is a crime.

3.  (a)  Subdivisions one and two do not apply to a criminal action wherein the defendant is accused of an offense defined in sections 125.10, 125.15, 125.20, 125.25, 125.26 and 125.27 of the penal law.

(b)  A motion made pursuant to subdivisions one or two upon expiration of the specified period may be denied where the people are not ready for trial if the people were ready for trial prior to the expiration of the specified period and their present unreadiness is due to some exceptional fact or circumstance, including, but not limited to, the sudden unavailability of evidence material to the people's case, when the district attorney has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will become available in a reasonable period.

(c) A motion made pursuant to subdivision two shall not:

(i) apply to any defendant who is serving a term of imprisonment for another offense;

(ii) require the release from custody of any defendant who is also being held in custody pending trial of another criminal charge as to which the applicable period has not yet elapsed;

(iii) prevent the redetention of or otherwise apply to any defendant who, after being released from custody pursuant to this section or otherwise, is charged with another crime or violates the conditions on which he has been released, by failing to appear at a judicial proceeding at which his presence is required or otherwise.

4.  In computing the time within which the people must be ready for trial pursuant to subdivisions one and two, the following periods must be excluded:

(a) a reasonable period of delay resulting from other proceedings concerning the defendant, including but not limited to: proceedings for the determination of competency and the period during which defendant is incompetent to stand trial; demand to produce; request for a bill of particulars; pre-trial motions; appeals; trial of other charges; and the period during which such matters are under consideration by the court; or

(b) the period of delay resulting from a continuance granted by the court at the request of, or with the consent of, the defendant or his counsel. The court must grant such a continuance only if it is satisfied that postponement is in the interest of justice, taking into account the public interest in the prompt dispositions of criminal charges. A defendant without counsel must not be deemed to have consented to a continuance unless he has been advised by the court of his rights under these rules and the effect of his consent; or

(c) (i) the period of delay resulting from the absence or unavailability of the defendant. A defendant must be considered absent whenever his location is unknown and he is attempting to avoid apprehension or prosecution, or his location cannot be determined by due diligence. A defendant must be considered unavailable whenever his location is known but his presence for trial cannot be obtained by due

diligence; or

(ii) where the defendant has either escaped from custody or has failed to appear when required after having previously been released on bail or on his own recognizance, and provided the defendant is not in custody on another matter, the period extending from the day the court issues a bench warrant pursuant to section 530.70 because of the defendant's failure to appear in court when required, to the day the defendant subsequently appears in the court pursuant to a bench warrant or voluntarily or otherwise; or

(d) a reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial pursuant to this section has not run and good cause is not shown for granting a severance; or

(e) the period of delay resulting from detention of the defendant in another jurisdiction provided the district attorney is aware of such detention and has been diligent and has made reasonable efforts to obtain the presence of the defendant for trial; or

(f) the period during which the defendant is without counsel through no fault of the court; except when the defendant is proceeding as his own attorney with the permission of the court; or

(g) other periods of delay occasioned by exceptional circumstances, including but not limited to, the period of delay resulting from a continuance granted at the request of a district attorney if (i) the continuance is granted because of the unavailability of evidence material to the people's case, when the district attorney has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will become available in a reasonable period; or (ii) the continuance is granted to allow the district attorney additional time to prepare the people's case and additional time is justified by the exceptional circumstances of the case.

(h) the period during which an action has been adjourned in contemplation of dismissal pursuant to sections 170.55, 170.56 and 215.10 of this chapter.

(i) The period prior to the defendant's actual appearance for arraignment in a situation in which the defendant has been directed to appear by the district attorney pursuant to subdivision three of section 120.20 or subdivision three of section 210.10.

(j) the period during which a family offense is before a family court until such time as an accusatory instrument or indictment is filed against the defendant alleging a crime constituting a family offense, as such term is defined in section 530.11 of this chapter.

5. For purposes of this section, (a) where the defendant is to be tried following the withdrawal of the plea of guilty or is to be retried following a mistrial, an order for a new trial or an appeal or collateral attack, the criminal action and the commitment to the custody of the sheriff, if any, must be deemed to have commenced on the date the withdrawal of the plea of guilty or the date the order occasioning a retrial becomes final;

(b) where a defendant has been served with an appearance ticket, the criminal action must be deemed to have commenced on the date the defendant first appears in a local criminal court in response to the ticket;

(c) where a criminal action is commenced by the filing of a felony complaint, and thereafter, in the course of the same criminal action either the felony complaint is replaced with or converted to an information, prosecutor's information or misdemeanor complaint pursuant to article 180 or a prosecutor's information is filed pursuant to section 190.70, the period applicable for the purposes of subdivision one must be the period applicable to the charges in the new accusatory instrument, calculated from the date of the filing of such new

accusatory instrument; provided, however, that when the aggregate of such period and the period of time, excluding the periods provided in subdivision four, already elapsed from the date of the filing of the felony complaint to the date of the filing of the new accusatory instrument exceeds six months, the period applicable to the charges in the felony complaint must remain applicable and continue as if the new accusatory instrument had not been filed;

(d) where a criminal action is commenced by the filing of a felony complaint, and thereafter, in the course of the same criminal action either the felony complaint is replaced with or converted to an information, prosecutor's information or misdemeanor complaint pursuant to article 180 or a prosecutor's information is filed pursuant to section 190.70, the period applicable for the purposes of subdivision two must be the period applicable to the charges in the new accusatory instrument, calculated from the date of the filing of such new accusatory instrument; provided, however, that when the aggregate of such period and the period of time, excluding the periods provided in subdivision four, already elapsed from the date of the filing of the felony complaint to the date of the filing of the new accusatory instrument exceeds ninety days, the period applicable to the charges in the felony complaint must remain applicable and continue as if the new accusatory instrument had not been filed.

(e) where a count of an indictment is reduced to charge only a misdemeanor or petty offense and a reduced indictment or a prosecutor's information is filed pursuant to subdivisions one-a and six of section 210.20, the period applicable for the purposes of subdivision one of this section must be the period applicable to the charges in the new accusatory instrument, calculated from the date of the filing of such new accusatory instrument; provided, however, that when the aggregate of such period and the period of time, excluding the periods provided in subdivision four of this section, already elapsed from the date of the filing of the indictment to the date of the filing of the new accusatory instrument exceeds six months, the period applicable to the charges in the indictment must remain applicable and continue as if the new accusatory instrument had not been filed;

(f) where a count of an indictment is reduced to charge only a misdemeanor or petty offense and a reduced indictment or a prosecutor's information is filed pursuant to subdivisions one-a and six of section 210.20, the period applicable for the purposes of subdivision two of this section must be the period applicable to the charges in the new accusatory instrument, calculated from the date of the filing of such new accusatory instrument; provided, however, that when the aggregate of such period and the period of time, excluding the periods provided in subdivision four of this section, already elapsed from the date of the filing of the indictment to the date of the filing of the new accusatory instrument exceeds ninety days, the period applicable to the charges in the indictment must remain applicable and continue as if the new accusatory instrument had not been filed.

6. The procedural rules prescribed in subdivisions one through seven of section 210.45 with respect to a motion to dismiss an indictment are also applicable to a motion made pursuant to subdivision two.

1)   Included in this motion shall be a demand for proof of all court appearances and that Affiant Granted the Prosecution Continuances and/or adjournments, which the Affiant denies granting any continuances and/or adjournments.

2)   Include in this motion any Attorney and/or Lawyer that was an advisor and/or Attorney of record other than the present Attorney (which shall be excluded from

said motion) that states that they Granted Continuances an/or Adjournments on behalf of the Affiant. Any signed statements by said Counsel.

B) In the Event that instruction A) cannot be carried out based upon the criteria used in the first three paragraphs of this document then the Affiant instructs the Attorney to file a Motion to Dismiss the Indictment in the matter of [STATE-OF-NEW-YORK: KINGS-COUNTY: STATE-SUPREME-COURT: DOCKET: 0046-2010] based on upon the failure of the Affiant to be invited to the Grand Jury that indicted the Affiant. The affiant bases this motion on following statues including but not limited to

§ 210.20 Motion to dismiss or reduce indictment.
   1.  After arraignment upon an indictment, the superior court, may, upon motion of the defendant, dismiss such indictment or any count thereof upon the ground that:
   (a)  Such indictment or count is defective, within the meaning of section 210.25; or
   (b)  The evidence before the grand jury was not legally sufficient to establish the offense charged or any lesser included offense; or
   (c)  The grand jury proceeding was defective, within the meaning of section 210.35; or
   (d)  The defendant has immunity with respect to the offense charged, pursuant to section 50.20 or 190.40; or
   (e)  The prosecution is barred by reason of a previous prosecution, pursuant to section 40.20; or
   (f)  The prosecution is untimely, pursuant to section 30.10; or
   (g)  The defendant has been denied the right to a speedy trial; or
   (h)  There exists some other jurisdictional or legal impediment to conviction of the defendant for the offense charged; or
   (i)  Dismissal is required in the interest of justice, pursuant to section 210.40.
   1-a. After arraignment upon an indictment, if the superior court, upon motion of the defendant pursuant to this subdivision or paragraph b of subdivision one of this section challenging the legal sufficiency of the evidence before the grand jury, finds that the evidence before the grand jury was not legally sufficient to establish the commission by the defendant of the offense charged in any count contained within the indictment, but was legally sufficient to establish the commission of a lesser included offense, it shall order the count or counts of the indictment with respect to which the finding is made reduced to allege the most serious lesser included offense with respect to which the evidence before the grand jury was sufficient, except that where the most serious lesser included offense thus found is a petty offense, and the court does not find evidence of the commission of any crime in any other count of the indictment, it shall order the indictment dismissed and a prosecutor's information charging the petty offense filed in the appropriate local criminal court. The motion to dismiss or reduce any count of an indictment based on legal insufficiency to establish the offense charged shall be made in accordance with the procedure set forth in subdivisions one through seven of section 210.45, provided however, the court shall state on the record the basis for its determination. Upon entering an order pursuant to this subdivision, the court shall consider the appropriateness of any securing order issued pursuant to article 510 of this chapter.
   2.  A motion pursuant to this section, except a motion pursuant to paragraph (g) of subdivision one, should be made within the period provided in section 255.20. A motion made pursuant to paragraph (g) of subdivision one must be made prior to the commencement of trial or entry of a plea of guilty.

3. Upon the motion, a defendant who is in a position adequately to Raise more than one ground in support thereof should raise every such ground upon which he intends to challenge the indictment. A subsequent motion based upon any such ground not so raised may be summarily denied, although the court, in the interest of justice and for good cause shown, may in its discretion entertain and dispose of such a motion on the merits notwithstanding.

4. Upon dismissing an indictment or a count thereof upon any of the grounds specified in paragraphs (a), (b), (c) and (i) of subdivision one, or, upon dismissing a superior court information or a count thereof upon any of the grounds specified in paragraphs (a) or (i) of subdivision one, the court may, upon application of the people, in its discretion authorize the people to submit the charge or charges to the same or another grand jury. When the dismissal is based upon some other ground, such authorization may not be granted. In the absence of authorization to submit or resubmit, the order of dismissal constitutes a bar to any further prosecution of such charge or charges, by indictment or otherwise, in any criminal court within the county.

5. If the court dismisses one or more counts of an indictment, against a defendant who was under the age of sixteen at the time of the commission of the crime and who did not lack criminal responsibility for such crime by reason of infancy, and one or more other counts of the indictment having been joined in the indictment solely with the dismissed count pursuant to subdivision six of section 200.20 is not dismissed, the court must direct that such count be removed to the family court in accordance with article seven hundred twenty-five of this chapter.

6. The effectiveness of an order reducing a count or counts of an indictment or dismissing an indictment and directing the filing of a prosecutor's information or dismissing a count or counts of an indictment charging murder in the first degree shall be stayed for thirty days following the entry of such order unless such stay is otherwise waived by the people. On or before the conclusion of such thirty-day period, the people shall exercise one of the following options:

(a) Accept the court's order by filing a reduced indictment, by dismissing the indictment and filing a prosecutor's information, or by filing an indictment containing any count or counts remaining after dismissal of the count or counts charging murder in the first degree, as appropriate;

(b) Resubmit the subject count or counts to the same or a different grand jury within thirty days of the entry of the order or such additional time as the court may permit upon a showing of good cause; provided, however, that if in such case an order is again entered with respect to such count or counts pursuant to subdivision one-a of this section, such count or counts may not again be submitted to a grand jury. Where the people exercise this option, the effectiveness of the order further shall be stayed pending a determination by the grand jury and the filing of a new indictment, if voted, charging the resubmitted count or counts;

(c) Appeal the order pursuant to subdivision one or one-a of section 450.20. Where he people exercise this option, the effectiveness of the order further shall be stayed in accordance with the provisions of subdivision two of section 460.40.

If the people fail to exercise one of the foregoing options, the court's order shall take effect and the people shall comply with paragraph (a) of this subdivision.

1) Include in the motion shall be a demand to inspect who and/ where the invitation to appear before the Grand Jury in regards to the Affiant and the matter of [STATE-OF-NEW-YORK: KINGS-COUNTY: STATE-SUPREME-COURT: DOCKET: 0046-2010], a list of any and all persons if not the Affiant that the Invitation may have been sent to and deemed for a statement from them as to the forwarding of the aforementioned invitation and/or to hold a hearing where this person can be examined under oath.

C) In the Event that instruction B) cannot be carried out based upon the criteria used in the first three paragraphs of this document then the Affiant instructs the Attorney to file a Motion to File a motions in the matter of [STATE-OF-NEW-YORK: KINGS-COUNTY: STATE-SUPREME-COURT: DOCKET: 0046-2010]  for a Pre-trial hearing in regards to any and all evidence that the Prosecution may have relied upon including but limited to documents that may not be authentic and/or false and/or misleading to have them thrown out and/or precluded from trial.   The Affiant further demands that the motions include demand to throw out all evidence derived by the Police and/or the Prosecutor and/or their agents against the Affiant that have violated the Affiant rights including but limited to the Affiant Miranda rights.  Which should also be thrown out due to violation of the Affiant rights.  The Attorney shall include in this motion a demand for a copy of all warrants in regards to the Affiant as it pertains to the mater of  [STATE-OF-NEW-YORK: KINGS-COUNTY: STATE-SUPREME-COURT: DOCKET: 0046-2010].

D) In the Event that instruction C) cannot be carried out based upon the criteria used in the first three paragraphs of this document then the Affiant instructs the Attorney to file a Subpoena(s) to retrieve video surveillance from the building at 210 Jerolemon Street in Brooklyn New York where the City building registry is located and where alleged crime occurred.  The Camera and/or surveillance video in aforementioned building can exonerate the Affiant in the matter of [STATE-OF-NEW-YORK: KINGS-COUNTY: STATE-SUPREME-COURT: DOCKET: 0046-2010].  Further the Affiant states that if there is reason to believe that the alleged crimes took place in another building locate said building and Subpoena video surveillance from that location.  This information and vital to the Affiant defense in this matter.

E)  In the Event that instruction D) cannot be carried out based upon the criteria used in the first three paragraphs of this document then the Affiant instructs the Attorney to file a Motion to demand the production of all witnesses in the matter of [STATE-OF-NEW-YORK: KINGS-COUNTY: STATE-SUPREME-COURT: DOCKET: 0046-2010] to be deposed and/or interviewed by the Attorney.

## Obligations of the Attorney

The Attorney has an obligation to the Affiant and the Law and Statutes of the of New York State, also the Attorney has certain Oath bound Obligations in regards to the Representation of the Affiant in regards to the matter of [STATE-OF-NEW-YORK: KINGS-COUNTY: STATE-SUPREME-COURT: DOCKET: 0046-2010], including but not limited to the Lawyer Canons of which the Affiant holds the Attorney responsible for upholding at all times in regards to the Affiant and the aforementioned matter.

# CANON 1. A Lawyer Should Assist in Maintaining the Integrity and Competence of the Legal Profession

ETHICAL CONSIDERATIONS

## EC 1-1

A basic tenet of the professional responsibility of lawyers is that every <u>person</u> in our society should have ready access to the independent professional services of a lawyer of integrity and competence. Maintaining the integrity and improving the competence of the bar to meet the highest standards is the ethical responsibility of every lawyer.

## EC 1-2

The public should be protected from those who are not qualified to be lawyers by reason of a deficiency in education or moral standards or of other relevant factors but who nevertheless seek to practice law. To assure the maintenance of high moral and educational standards of the legal profession, lawyers should affirmatively assist courts and other appropriate bodies in promulgating, enforcing, and improving requirements for admission to the bar. In like manner, the bar has a positive obligation to aid in the continued improvement of all phases of pre-admission and post-admission legal education.

## EC 1-4

The integrity of the profession can be maintained only if conduct of lawyers in violation of the Disciplinary Rules is brought to the attention of the proper officials. A lawyer should reveal voluntarily to those officials all knowledge, other than knowledge protected as a confidence or secret, of conduct of another lawyer which the lawyer believes clearly to be a violation of the Disciplinary Rules that raises a substantial question as to the other lawyer's honesty, trustworthiness or fitness in other respects as a lawyer. A lawyer should, upon request, serve on and assist committees and boards having responsibility for the administration of the Disciplinary Rules.

## EC 1-5

A lawyer should maintain high standards of professional conduct and should encourage other lawyers to do likewise. A lawyer should be temperate and dignified, and should refrain from all illegal and morally reprehensible conduct. Because of the lawyer's position in society, even minor violations of law by a lawyer may tend to lessen public confidence in the legal profession. Obedience to law exemplifies respect for law. To lawyers especially, respect for the law should be more than a platitude.

## EC 1-7

A lawyer should avoid bias and condescension toward, and treat with dignity and respect, all parties, witnesses, lawyers, court employees, and other persons involved in the legal process.

## EC 1-8

A law firm should adopt measures giving reasonable assurance that all lawyers in the firm conform to the Disciplinary Rules and that the conduct of non-lawyers employed by the firm is compatible with the professional obligations of the lawyers in the firm. Such measures may include informal supervision and occasional admonition, a procedure whereby junior lawyers can make confidential referral of ethical problems directly to a designated senior lawyer or special committee, and continuing legal education in professional ethics.

## DR 1-102 [1200.3] Misconduct.

A. A lawyer or law firm shall not:

1. Violate a Disciplinary Rule.

2. Circumvent a Disciplinary Rule through actions of another.

3. Engage in illegal conduct that adversely reflects on the lawyer's honesty, trustworthiness or fitness as a lawyer.

4. Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

5. Engage in conduct that is prejudicial to the administration of justice.

6. Unlawfully discriminate in the practice of law, including in hiring, promoting or otherwise determining conditions of employment, on the basis of age, race, creed, color, national origin, sex, disability, marital status, or sexual orientation. Where there is a tribunal with jurisdiction to hear a complaint, if timely brought, other than a Departmental Disciplinary Committee, a complaint based on unlawful discrimination shall be brought before such tribunal in the first instance. A certified copy of a determination by such a tribunal, which has become final and enforceable, and as to which the right to judicial or appellate review has been exhausted, finding that the lawyer has engaged in an unlawful discriminatory practice shall constitute *prima facie* evidence of professional misconduct in a disciplinary proceeding.

7. Engage in any other conduct that adversely reflects on the lawyer's fitness as a lawyer.

## DR 1-105 [1200.5-a] Disciplinary Authority and Choice of Law.

A. A lawyer admitted to practice in this <u>state</u> is subject to the disciplinary authority of this state, regardless of where the lawyers conduct occurs. A lawyer may be subject to the disciplinary authority of both this state and another jurisdiction where the lawyer is admitted for the same conduct.

B. In any exercise of the disciplinary authority of this <u>state</u>, the rules of professional conduct to be applied shall be as follows:

1. For conduct in connection with a proceeding in a court before which a lawyer has been admitted to practice (either generally or for purposes of that proceeding), the rules to be applied shall be the rules of the jurisdiction in which the court sits, unless the rules of the court provide otherwise; and

2. For any other conduct:

a. If the lawyer is licensed to practice only in this <u>state</u>, the rules to be applied shall be the rules of this state, and

b. If the lawyer is licensed to practice in this <u>state</u> and another jurisdiction, the rules to be applied shall be the rules of the admitting jurisdiction in which the lawyer principally practices; provided, however, that if particular conduct clearly has its predominant effect in another jurisdiction in which the lawyer is licensed to practice, the rules of that jurisdiction shall be applied to that conduct.

# CANON 2. A LAWYER SHOULD ASSIST THE LEGAL PROFESSION IN FULFILLING ITS DUTY TO MAKE LEGAL COUNSEL AVAILABLE

## ETHICAL CONSIDERATIONS

## EC 2-1

The need of members of the public for legal services is met only if they recognize their legal problems, appreciate the importance of seeking assistance, and are able to obtain the services of acceptable legal counsel. Hence, important functions of the legal profession are to educate people to recognize their problems, to facilitate the process of intelligent selection of lawyers, and to assist in making legal services fully available.

**Recognition of Legal Problems**

## EC 2-2

The legal professional should help the public to recognize legal problems because such problems may not be self-revealing and often are not timely noticed. Therefore, lawyers should encourage and participate in educational

and public relations programs concerning our legal system with particular reference to legal problems that frequently arise.

## EC 2-21

A lawyer should not accept compensation or anything of value incident to the lawyer's employment or services from one other than the client without the knowledge and consent of the client after full disclosure.

## EC 2-26

A lawyer is under no obligation to act as advisor or advocate for every person who may wish to become a client; but in furtherance of the objective of the bar to make legal services fully available, a lawyer should not lightly decline proffered employment. The fulfillment of this objective requires acceptance by a lawyer of a fair share of tendered employment which may be unattractive both to the lawyer and the bar generally.

## EC 2-27

History is replete with instances of distinguished sacrificial services by lawyers who have represented unpopular clients and causes. Regardless of personal feelings, a lawyer should not decline representation because a client or a cause is unpopular or community reaction is adverse. A lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social or moral views or activities.

## EC 2-28

The personal preference of a lawyer to avoid adversary alignment against judges, other lawyers, public officials or influential members of the community does not justify rejection of tendered employment.

## EC 2-29

When a lawyer is appointed by a court or requested by a bar association to undertake representation of a person unable to obtain counsel, whether for financial or other reasons, the lawyer should not seek to be excused from undertaking the representation except for compelling reasons. Compelling reasons do not include such factors as the repugnance of the subject matter of the proceeding, the identity or position of a person involved in the case, the belief of the lawyer that the defendant in a criminal proceeding is guilty, or the belief of the lawyer regarding the merits of the civil case.

## EC 2-30

Employment should not be accepted by a lawyer who is unable to render competent service or who knows or it is obvious that the person seeking to employ the lawyer desires to institute or maintain an action merely for the purpose of harassing or maliciously injuring another. Likewise, a lawyer

should decline employment if the intensity of personal feelings, as distinguished from a community attitude, may impair effective representation of a prospective client. If a lawyer knows that a client has previously obtained counsel, the lawyer should not accept employment in the matter unless the other counsel approves or withdraws, or the client terminates the prior employment.

## EC 2-31

Full availability of legal counsel requires both that persons be able to obtain counsel and that lawyers who undertake representation complete the work involved. Trial counsel for a convicted defendant should continue to represent the client by advising whether to take an appeal and, if the appeal is prosecuted, by representing the client through the appeal unless new counsel is substituted or withdrawal is permitted by the appropriate court.

## EC 2-32

A decision by a lawyer to withdraw should be made only on the basis of compelling circumstances and, in a matter pending before a <u>tribunal</u>, the lawyer must comply with the rules of the tribunal regarding withdrawal. A lawyer should not withdraw without considering carefully and endeavoring to minimize the possible adverse effect on the rights of the client and the possibility of prejudice to the client as a result of the withdrawal. Even when withdrawal is justifiable, a lawyer should protect the welfare of the client by giving due notice of the withdrawal, suggesting employment of other counsel, delivering to the client all papers and property to which the client is entitled, cooperating with counsel subsequently employed, and otherwise endeavoring to minimize the possibility of harm. Further, the lawyer should refund to the client any compensation not earned during the employment.

## EC 2-33

As a part of the legal profession's commitment to the principle that high quality legal services should be available to all, lawyers are encouraged to cooperate with <u>qualified legal assistance organizations</u> providing prepaid legal services. Such participation should at all times be in accordance with the basic tenets of the profession: independence, integrity, competence and devotion to the interests of individual clients. A lawyer so participating should make certain that the relationship with a qualified legal assistance organization in no way interferes with independent, professional representation of the interests of the individual client. A lawyer should avoid situations in which officials of the organization who are not lawyers attempt to direct lawyers concerning the manner in which legal services are performed for individual members and should also avoid situations in which considerations of economy are given undue weight in determining the lawyers employed by an organization or the legal services to be performed for the member or beneficiary, rather than competence and quality of service. A lawyer interested in maintaining the historic traditions of the profession and preserving the function of a lawyer as a trusted and

independent advisor to individual members of society should carefully assess such factors when accepting employment by, or otherwise participating in a particular, qualified legal assistance organization and, while so participating, should adhere to the highest professional standards of effort and competence.

## DR 2-110 [1200.15] Withdrawal from Employment.

A. In general.

1. If permission for withdrawal from employment is required by the rules of a tribunal, a lawyer shall not withdraw from employment in a proceeding before that tribunal without its permission.

2. Even when withdrawal is otherwise permitted or required under section DR 2-110 [1200.15] (A)(l), (B), or (C), a lawyer shall not withdraw from employment until the lawyer has taken steps to the extent reasonably practicable to avoid foreseeable prejudice to the rights of the client, including giving due notice to the client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled and complying with applicable laws and rules.

3. A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned.

B. Mandatory withdrawal.

A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:

1. The lawyer knows or it is obvious that the client is bringing the legal action, conducting the defense, or asserting a position in the litigation, or is otherwise having steps taken, merely for the purpose of harassing or maliciously injuring any person.

2. The lawyer knows or it is obvious that continued employment will result in violation of a Disciplinary Rule.

3. The lawyer's mental or physical condition renders it unreasonably difficult to carry out the employment effectively.

4. The lawyer is discharged by his or her client.

C. Permissive withdrawal.

## EC 3-1

The prohibition against the practice of law by a non-lawyer is grounded in the need of the public for integrity and competence of those who undertake to render legal services. Because of the fiduciary and personal character of the lawyer-client relationship and the inherently complex nature of our legal system, the public can better be assured of the requisite responsibility and competence if the practice of law is confined to those who are subject to the requirements and regulations imposed upon members of the legal profession.

## EC 3-2

The sensitive variations in the considerations that bear on legal determinations often make it difficult even for a lawyer to exercise appropriate professional judgment, and it is therefore essential that the personal nature of the relationship of client and lawyer be preserved. Competent professional judgment is the product of a trained familiarity with law and legal processes, a disciplined, analytical approach to legal problems, and a firm ethical commitment.

## EC 3-3

A non-lawyer who undertakes to handle legal matters is not governed as to integrity or legal competence by the same rules that govern the conduct of a lawyer. A lawyer is not only subject to that regulation but also is committed to high standards of ethical conduct. The public interest is best served in legal matters by a regulated profession committed to such standards. The Disciplinary Rules protect the public in that they prohibit a lawyer from seeking employment by improper overtures, from acting in cases of divided loyalties, and from submitting to the control of others in the exercise of judgment. Moreover, a person who entrusts legal matters to a lawyer is protected by the attorney-client privilege and by the duty of the lawyer to hold inviolate the confidences and secrets of the client.

## EC 3-4

A person who seeks legal services often is not in a position to judge whether he or she will receive proper professional attention. The entrustment of a legal matter may well involve the confidences, the reputation, the property, the freedom, or even the life of the client. Proper protection of members of the public demands that no person be permitted to act in the confidential and demanding capacity of a lawyer without being subject to the regulations of the legal profession.

## EC 3-5

It is neither necessary nor desirable to attempt the formulation of a single, specific definition of what constitutes the practice of law. Functionally, the practice of law relates to the rendition of services for others that call for the professional judgment of a lawyer. The essence of the professional judgment of the lawyer is the educated ability to relate the general body

and philosophy of law to a specific legal problem of a client; and thus, the public interest will be better served if only lawyers are permitted to act in matters involving professional judgment. Where this professional judgment is not involved, non-lawyers, such as court clerks, police officers, abstracters, and many governmental employees, may engage in occupations that require a special knowledge of law in certain areas. But the services of a lawyer are essential in the public interest whenever the exercise of professional legal judgment is required.

## EC 3-6

A lawyer often delegates tasks to clerks, secretaries, and other lay persons. Such delegation is proper if the lawyer maintains a direct relationship with the client, supervises the delegated work, and has complete professional responsibility for the work product. This delegation enables a lawyer to render legal service more economically and efficiently.

## EC 3-7

The prohibition against a non-lawyer practicing law does not prevent a non-lawyer from representing himself or herself, for then only that person is ordinarily exposed to possible injury. The purpose of the legal profession is to make educated legal representation available to the public; but anyone who does not wish to take advantage of such representation is not required to do so. Even so, the legal profession should help members of the public to recognize legal problems and to understand why it may be unwise for them to act for themselves in matters having legal consequences.

# CANON 4. A LAWYER SHOULD PRESERVE THE CONFIDENCES AND SECRETS OF A CLIENT

### ETHICAL CONSIDERATIONS

## EC 4-1

Both the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidences and secrets of one who has employed or sought to employ the lawyer. A client must feel free to discuss anything with his or her lawyer and a lawyer must be equally free to obtain information beyond that volunteered by the client. A lawyer should be fully informed of all the facts of the matter being handled in order for the client to obtain the full advantage of our legal system. It is for the lawyer in the exercise of independent professional judgment to separate the relevant and important from the irrelevant and unimportant. The observance of the ethical obligation of a lawyer to hold inviolate the confidences and secrets of a client not only facilitates the full development of facts essential to proper representation of the client but also encourages non-lawyers to seek early legal assistance.

## EC 4-2

The obligation to protect confidences and secrets obviously does not preclude a lawyer from revealing information when the client consents after full disclosure, when necessary to perform the lawyer's professional employment, when permitted by a Disciplinary Rule, or when required by law. Unless the client otherwise directs, a lawyer may disclose the affairs of the client to partners or associates of his or her firm. It is a matter of common knowledge that the normal operation of a law office exposes confidential professional information to non-lawyer employees of the office, particularly secretaries and those having access to the files; and this obligates a lawyer to exercise care in selecting and training employees so that the sanctity of all confidences and secrets of clients may be preserved. If the obligation extends to two or more clients as to the same information, a lawyer should obtain the permission of all before revealing the information. A lawyer must always be sensitive to the rights and wishes of the client and act scrupulously in the making of decisions which may involve the disclosure of information obtained in the professional relationship. Thus, in the absence of consent of the client after full disclosure, a lawyer should not associate another lawyer in the handling of a matter; nor should the lawyer, in the absence of consent, seek counsel from another lawyer if there is a reasonable possibility that the identity of the client or the client's confidences or secrets would be revealed to such lawyer. Both social amenities and professional duty should cause a lawyer to shun indiscreet conversations concerning clients.

## EC 4-3

Unless the client otherwise directs, it is not improper for a lawyer to give limited information to an outside agency necessary for statistical, bookkeeping, accounting, data processing, banking, printing, or other legitimate purposes, provided the lawyer exercises due care in the selection of the agency and warns the agency that the information must be kept confidential.

## EC 4-4

The attorney-client privilege is more limited than the ethical obligation of a lawyer to guard the confidences and secrets of the client. This ethical precept, unlike the evidentiary privilege, exists without regard to the nature or source of information or the fact that others share the knowledge. A lawyer should endeavor to act in a manner which preserves the evidentiary privilege; for example, the lawyer should avoid professional discussions in the presence of persons to whom the privilege does not extend. A lawyer owes an obligation to advise the client of the attorney-client privilege and timely to assert the privilege unless it is waived by the client.

## EC 4-5

A lawyer should not use information acquired in the course of the representation of a client to the disadvantage of the client and a lawyer should not use, except with the consent of the client after full disclosure, such information for the lawyer's own purposes. Likewise, a lawyer should be diligent in his or her efforts to prevent the misuse of such information by

employees and associates. Care should be exercised by a lawyer to prevent the disclosure of the confidences and secrets of one client to another, and no employment should be accepted that might require such disclosure.

## EC 4-6

The obligation to protect confidences and secrets of a client continues after the termination of employment. For example, a lawyer might provide for the personal papers of the client to be returned to the client and for the papers of the lawyer to be delivered to another lawyer or to be destroyed. In determining the method of disposition, the instructions and wishes of the client should be a dominant consideration. DR 2-111 sets forth the procedures for protecting confidences and secrets of clients in connection with the sale of a law practice.

## EC 4-7

The lawyer's exercise of discretion to disclose confidences and secrets requires consideration of a wide range of factors and should not be subject to reexamination. A lawyer is afforded the professional discretion to reveal the intention of a client to commit a crime and the information necessary to prevent the crime and cannot be subjected to discipline either for revealing or not revealing such intention or information. In exercising this discretion, however, the lawyer should consider such factors as the seriousness of the potential injury to others if the prospective crime is committed, the likelihood that it will be committed and its imminence, the apparent absence of any other feasible way in which the potential injury can be prevented, the extent to which the client may have attempted to involve the lawyer in the prospective crime, the circumstances under which the lawyer acquired the information of the client's intent, and any other possibly aggravating or extenuating circumstances. In any case, a disclosure adverse to the client's interest should be no greater than the lawyer reasonably believes necessary to the purpose.

DISCIPLINARY RULES

## DR 4-101 [1200.19] Preservation of Confidences and Secrets of a Client.

A. "Confidence" refers to information protected by the attorney–client privilege under applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.

B. Except when permitted under DR 4–101 [1200.19] (C), a lawyer shall not knowingly:

1. Reveal a confidence or secret of a client.

2. Use a confidence or secret of a client to the disadvantage of the client.

3. Use a confidence or secret of a client for the advantage of the lawyer or of a third <u>person</u>, unless the client consents after full disclosure.

C. A lawyer may reveal:

1. Confidences or secrets with the consent of the client or clients affected, but only after a full disclosure to them.

2. Confidences or secrets when permitted under Disciplinary Rules or required by law or court order.

3. The intention of a client to commit a crime and the information necessary to prevent the crime.

4. Confidences or secrets necessary to establish or collect the lawyer's fee or to defend the lawyer or his or her employees or associates against an accusation of wrongful conduct.

5. Confidences or secrets to the extent implicit in withdrawing a written or oral opinion or representation previously given by the lawyer and believed by the lawyer still to be relied upon by a third <u>person</u> where the lawyer has discovered that the opinion or representation was based on materially inaccurate information or is being used to further a crime or <u>fraud</u>.

D. A lawyer shall exercise reasonable care to prevent his or her employees, associates, and others whose services are utilized by the lawyer from disclosing or using confidences or secrets of a client, except that a lawyer may reveal the information allowed by <u>DR 4-101</u> [1200.19] (C) through an employee.

# CANON 5. A LAWYER SHOULD EXERCISE INDEPENDENT PROFESSIONAL JUDGMENT ON BEHALF OF A CLIENT

## ETHICAL CONSIDERATIONS

## EC 5-1

The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of the client and free of compromising influences and loyalties. Neither the lawyer's personal interests, the interests of other clients, nor the desires of third persons should be permitted to dilute the lawyer's loyalty to the client.

Interests of a Lawyer That May Affect the Lawyer's Judgment

## EC 5-2

A lawyer should not accept proffered employment if the lawyer's personal interests or desires will, or there is reasonable probability that they will, affect adversely the advice to be given or services to be rendered the prospective client. After accepting employment, a lawyer carefully should refrain from acquiring a property right or assuming a position that would tend to make his or her judgment less protective of the interests of the client.

## EC 5-18

A lawyer employed or retained by a corporation or similar entity owes allegiance to the entity and not to a shareholder, director, officer, employee, representative, or other <u>person</u> connected with the entity. In advising the entity, a lawyer should keep paramount its interests and the lawyer's professional judgment should not be influenced by the personal desires of any person or organization. Occasionally a lawyer for an entity is requested to represent a shareholder, director, officer, employee, representative, or other person connected with the entity in an individual capacity; in such case the lawyer may serve the individual only if the lawyer is convinced that <u>differing interests</u> are not present. Representation of a corporation or similar entity does not necessarily constitute representation of all of its affiliates. A number of factors should be considered before undertaking a representation adverse to the affiliate of a client including, without limitation, the nature and extent of the relationship between the entities, the nature and extent of the relationship between the matters, and the reasonable understanding of the organizational client as to whether its affiliates fall within the scope of the representation.

Occasionally, the lawyer may learn that an officer, employee or other person associated with the entity is engaged in action, refuses to act, or intends to act or to refrain from acting in a matter related to the representation that is a violation of a legal obligation to the entity, or a violation of law which reasonably might be imputed to the entity, and is likely to result in substantial injury to the entity. In such event, the lawyer must proceed as is reasonably necessary in the best interest of the entity. In determining how to proceed, the lawyer should give due consideration to the seriousness of the violation and its consequences, the scope and nature of the lawyers representation, the responsibility in the entity and the apparent motivation of the person involved, the policies of the entity concerning such matters and any other relevant considerations. Any measures taken should be designed to minimize disruption of the entity and the risk of revealing confidences and secrets of the entity. Such measures may include among others: asking reconsideration of the matter, advising that a separate legal opinion on the matter be sought for presentation to appropriate authority in the entity, and referring the matter to higher authority in the entity not involved in the wrongdoing, including, if warranted by the seriousness of the matter, referral to the highest authority that can act in behalf of the entity as determined by applicable law.

A lawyer for a corporation or other organization who is asked to become a member of its board of directors should determine whether the responsibilities of the two roles may conflict. The lawyer may be called on to advise the corporation in matters involving actions of the directors. Consideration should be given to the frequency with which such situations may arise, the potential intensity of the conflict, the effect of the lawyers resignation from the board and the possibility of the corporations obtaining legal advice from another lawyer in such situations. If there is a material risk that the dual role will compromise the lawyers independent professional judgment on behalf of the corporation, the lawyer should not serve as a director.

## EC 5-22

Economic, political or social pressures by third persons are less likely to impinge upon the independent judgment of a lawyer in a matter in which the lawyer is compensated directly by the client and the professional work is exclusively with the client. On the other hand, if a lawyer is compensated from a source other than the client, the lawyer may feel a sense of responsibility to someone other than the client.

## DR 5-107 [1200.26] Avoiding Influence by Others than the Client.

A. Except with the consent of the client after full disclosure a lawyer shall not:

1. Accept compensation for legal services from one other than the client.

2. Accept from one other than the client anything of value related to his or her representation of or employment by the client.

B. Unless authorized by law, a lawyer shall not permit a <u>person</u> who recommends, employs, or pays the lawyer to render legal service for another to direct or regulate his or her professional judgment in rendering such legal services, or to cause the lawyer to compromise the lawyer's duty to maintain the confidences and secrets of the client under <u>DR 4-101</u> [1200.19] (B).

# CANON 6. A LAWYER SHOULD REPRESENT A CLIENT COMPETENTLY

ETHICAL CONSIDERATIONS

## EC 6-1

Because of the lawyer's vital role in the legal process, the lawyer should act with competence and proper care in representing clients. The lawyer should strive to become and remain proficient in his or her practice and should accept employment only in matters which he or she is or intends to become competent to handle.

## EC 6-2

A lawyer is aided in attaining and maintaining competence by keeping abreast of current legal literature and developments, participating in continuing legal education programs, concentrating in particular areas of the law, and by utilizing other available means. The lawyer has the additional ethical obligation to assist in improving the legal profession, and should do so by participating in bar activities intended to advance the quality and standards of members of the profession. Of particular importance is the careful training of younger associates and the giving of sound guidance to all lawyers who consult the lawyer. In short, a lawyer should strive at all levels to aid the legal profession in advancing the highest possible standards of integrity and competence and personally to meet those standards.

## EC 6-3

While the licensing of a lawyer is evidence of meeting the standards then prevailing for admission to the bar, a lawyer generally should not accept employment in any area of the law in which he or she is not qualified. However, the lawyer may accept such employment if in good faith the lawyer expects to become qualified through study and investigation, as long as such preparation would not result in unreasonable delay or expense to the client. Proper preparation and representation may require the association by the lawyer of professionals in other disciplines. A lawyer offered employment in a matter in which the lawyer is not and does not expect to become so qualified should either decline the employment or, with the consent of the client, accept the employment and associate a lawyer who is competent in the matter.

## EC 6-4

Having undertaken representation, a lawyer should use proper care to safeguard the interests of the client. If a lawyer has accepted employment in a matter beyond the lawyer's competence but in which the lawyer expected to become competent, the lawyer should diligently undertake the work and study necessary to be qualified. In addition to being qualified to handle a particular matter, the lawyer's obligation to the client requires adequate preparation for and appropriate attention to the legal work, as well as promptly responding to inquiries from the client.

## EC 6-5

A lawyer should have pride in his or her professional endeavors. The obligation to act competently calls for higher motivation than that arising from fear of civil liability or disciplinary penalty.

## EC 6-6

A lawyer should not seek, by contract or other means, to limit prospectively the lawyer's individual liability to the client for malpractice nor shall a lawyer settle a claim for malpractice with an otherwise unrepresented client

without first advising the client that independent representation is appropriate. A lawyer who handles the affairs of the client properly has no need to attempt to limit liability for professional activities and one who does not handle the affairs of the client properly should not be permitted to do so. A lawyer who is a shareholder in or is associated with a professional legal corporation, a member of a limited liability company or a partner in a limited liability partnership engaged in the practices of law may, however, limit the lawyer's liability for malpractice to the extent permitted by law.

DISCIPLINARY RULES

## DR 6-101 [1200.30] Failing to Act Competently.

A. A lawyer shall not:

1. Handle a legal matter which the lawyer knows or should know that he or she is not competent to handle, without associating with a lawyer who is competent to handle it.

2. Handle a legal matter without preparation adequate in the circumstances.

3. Neglect a legal matter entrusted to the lawyer.

## DR 6-102 [1200.31] Limiting Liability to Client.

A. A lawyer shall not seek, by contract or other means, to limit prospectively the lawyer's individual liability to a client for malpractice, or, without first advising that person that independent representation is appropriate in connection therewith, to settle a claim for such liability with an unrepresented client or former client.

# CANON 7. A LAWYER SHOULD REPRESENT A CLIENT ZEALOUSLY WITHIN THE BOUNDS OF THE LAW

ETHICAL CONSIDERATIONS

## EC 7-1

The duty of a lawyer, both to the client and to the legal system, is to represent the client zealously within the bounds of the law, which includes Disciplinary Rules and enforceable professional regulations. The professional responsibility of a lawyer derives from membership in a profession which has the duty of assisting members of the public to secure and protect available legal rights and benefits. In our government of laws and not of individuals, each member of our society is entitled to have his or her conduct judged and regulated in accordance with the law; to seek any lawful objective through legally permissible means; and to present for adjudication any lawful claim, issue, or defense.

## EC 7-2

The bounds of the law in a given case are often difficult to ascertain. The language of legislative enactments and judicial opinions may be uncertain as applied to varying factual situations. The limits and specific meaning of apparently relevant law may be made doubtful by changing or developing constitutional interpretations, inadequately expressed statutes or judicial opinions, and changing public and judicial attitudes. Certainty of law ranges from well-settled rules through areas of conflicting authority to areas without precedent.

## EC 7-3

Where the bounds of law are uncertain, the action of a lawyer may depend on whether the lawyer is serving as advocate or adviser. A lawyer may serve simultaneously as both advocate and adviser, but the two roles are essentially different. In asserting a position on behalf of the client, an advocate for the most part deals with past conduct and must take the facts as they are. By contrast, a lawyer serving as adviser primarily assists the client in determining the course of future conduct and relationships. While serving as advocate, a lawyer should resolve in favor of the client doubts as to the bounds of the law. In serving a client as adviser, a lawyer in appropriate circumstances should give his or her professional opinion as to what the ultimate decisions of the courts would likely be as to the applicable law.

**Duty of the Lawyer to a Client**

## EC 7-4

The advocate may urge any permissible construction of the law favorable to the client, without regard to the lawyer's professional opinion as to the likelihood that the construction will ultimately prevail. The lawyer's conduct is within the bounds of the law, and therefore permissible, if the position taken is supported by the law or is supportable by a good faith argument for an extension, modification, or reversal of the law. However, a lawyer is not justified in asserting a position in litigation that is frivolous.

## EC 7-5

A lawyer as adviser furthers the interest of the client by giving a professional opinion as to what he or she believes would likely be the ultimate decision of the courts on the matter at hand and by informing the client of the practical effect of such decision. The lawyer may continue in the representation of the client even though the client has elected to pursue a course of conduct contrary to the advice of the lawyer so long as the lawyer does not thereby knowingly assist the client to engage in illegal conduct or to take a frivolous legal position. A lawyer should never encourage or aid the client to commit criminal acts or counsel the client on how to violate the law and avoid punishment therefor.

## EC 7-6

Whether the proposed action of a lawyer is within the bounds of the law may be a perplexing question when the client is contemplating a course of conduct having legal consequences that vary according to the client's intent, motive, or desires at the time of the action. Often a lawyer is asked to assist the client in developing evidence relevant to the state of mind of the client at a particular time. The lawyer may properly assist the client in the development and preservation of evidence of existing motive, intent, or desire; obviously, the lawyer may not do anything furthering the creation or preservation of false evidence. In many cases a lawyer may not be certain as to the state of mind of the client, and in those situations the lawyer should resolve reasonable doubts in favor of the client.

## EC 7-7

In certain areas of legal representation not affecting the merits of the cause or substantially prejudicing the rights of a client, a lawyer is entitled to make decisions. But otherwise the authority to make decisions is exclusively that of the client and, if made within the framework of the law, such decisions are binding on the lawyer. As typical examples in civil cases, it is for the client to decide whether to accept a settlement offer or whether to waive the right to plead an affirmative defense. A defense lawyer in a criminal case has the duty to advise the client fully on whether a particular plea to a charge appears to be desirable and as to the prospects of success on appeal, but it is for the client to decide what plea should be entered and whether an appeal should be taken.

## EC 7-8

A lawyer should exert best efforts to ensure that decisions of the client are made only after the client has been informed of relevant considerations. A lawyer ought to initiate this decision-making process if the client does not do so. Advice of a lawyer to the client need not be confined to purely legal considerations. A lawyer should advise the client of the possible effect of each legal alternative. A lawyer should bring to bear upon this decision-making process the fullness of his or her experience as well as the lawyer's objective viewpoint. In assisting the client to reach a proper decision, it is often desirable for a lawyer to point out those factors which may lead to a decision that is morally just as well as legally permissible. The lawyer may emphasize the possibility of harsh consequences that might result from assertion of legally permissible positions. In the final analysis, however, the lawyer should always remember that the decision whether to forego legally available objectives or methods because of non-legal factors is ultimately for the client and not for the lawyer. In the event that the client in a non-adjudicatory matter insists upon a course of conduct that is contrary to the judgment and advice of the lawyer but not prohibited by Disciplinary Rules, the lawyer may withdraw from the employment.

## EC 7-9

In the exercise of the lawyer's professional judgment on those decisions which are for the lawyer's determination in the handling of a legal matter, a lawyer should always act in a manner consistent with the best interests of

the client. However, when an action in the best interest of the client seems to the lawyer to be unjust, the lawyer may ask the client for permission to forego such action.

## EC 7-10

The duty of a lawyer to represent the client with zeal does not militate against the concurrent obligations to treat with consideration all persons involved in the legal process and to avoid the infliction of needless harm.

## EC 7-11

The responsibilities of a lawyer may vary according to the intelligence, experience, mental condition or age of a client, the obligation of a public officer, or the nature of a particular proceeding. Examples include the representation of an illiterate or an incompetent, service as a public prosecutor or other government lawyer, and appearances before administrative and legislative bodies.

## EC 7-12

Any mental or physical condition that renders a client incapable of making a considered judgment on his or her own behalf casts additional responsibilities upon the lawyer. Where an incompetent is acting through a guardian or other legal representative, a lawyer must look to such representative for those decisions which are normally the prerogative of the client to make. If a client under disability has no legal representative, the lawyer may be compelled in court proceedings to make decisions on behalf of the client. If the client is capable of understanding the matter in question or of contributing to the advancement of his or her interests, regardless of whether the client is legally disqualified from performing certain acts, the lawyer should obtain from the client all possible aid. If the disability of a client and the lack of a legal representative compel the lawyer to make decisions for the client, the lawyer should consider all circumstances then prevailing and act with care to safeguard and advance the interests of the client. But obviously a lawyer cannot perform any act or make any decision which the law requires the client to perform or make, either acting alone if competent, or by a duly constituted representative if legally incompetent.

## EC 7-13

The responsibility of a public prosecutor differs from that of the usual advocate; it is to seek justice, not merely to convict. This special duty exists because: (1) the prosecutor represents the sovereign and therefore should use restraint in the discretionary exercise of governmental powers, such as in the selection of cases to prosecute; (2) during trial the prosecutor is not only an advocate but also may make decisions normally made by an individual client, and those affecting the public interest should be fair to all; and (3) in our system of criminal justice the accused is to be given the benefit of all reasonable doubts. With respect to evidence and witnesses, the prosecutor has responsibilities different from those of a lawyer in private practice: the prosecutor should make timely disclosure to

the defense of available evidence, known to the prosecutor, that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment. Further, a prosecutor should not intentionally avoid pursuit of evidence merely because he or she believes it will damage the prosecutor's case or aid the accused.

## EC 7-14

A government lawyer who has discretionary power relative to litigation should refrain from instituting or continuing litigation that is obviously unfair. A government lawyer not having such discretionary power who believes there is lack of merit in a controversy submitted to the lawyer should so advise his or her superiors and recommend the avoidance of unfair litigation. A government lawyer in a civil action or administrative proceeding has the responsibility to seek justice and to develop a full and fair record, and should not use his or her position or the economic power of the government to harass parties or to bring about unjust settlements or results. The responsibilities of government lawyers with respect to the compulsion of testimony and other information are generally the same as those of public prosecutors.

## EC 7-15

The nature and purpose of proceedings before administrative agencies vary widely. The proceedings may be legislative or quasi-judicial, or a combination of both. They may be *ex parte* in character, in which event they may originate either at the instance of the agency or upon motion of an interested party. The scope of an inquiry may be purely investigative or it may be truly adversary looking toward the adjudication of specific rights of a party or of classes of parties. The foregoing are but examples of some of the types of proceedings conducted by administrative agencies. A lawyer appearing before an administrative agency, regardless of the nature of the proceeding it is conducting, has the continuing duty to advance the cause of the client within the bounds of the law. Where the applicable rules of the agency impose specific obligations upon a lawyer, it is the lawyer's duty to comply therewith, unless the lawyer has a legitimate basis for challenging the validity thereof. In all appearances before administrative agencies, a lawyer should identify the lawyer, the client, if identity of the client is not privileged, and the representative nature of the lawyer's appearance. It is not improper, however, for a lawyer to seek from an agency information available to the public without identifying the client.

## EC 7-16

The primary business of a legislative body is to enact laws rather than to adjudicate controversies, although on occasion the activities of a legislative body may take on the characteristics of an adversary proceeding, particularly in investigative and impeachment matters. The role of a lawyer supporting or opposing proposed legislation normally is quite different from the lawyer's role in representing a person under investigation or on trial by a legislative body. When a lawyer appears in connection with proposed legislation, it is to affect the lawmaking process, but when the lawyer

appears on behalf of a client in investigatory or impeachment proceedings, it is to protect the rights of the client. In either event, the lawyer should identify the lawyer and the client, if identity of the client is not privileged, and should comply with applicable laws and legislative rules.

## EC 7-17

The obligation of loyalty to the client applies only to a lawyer in the discharge of professional duties and implies no obligation to adopt a personal viewpoint favorable to the interests or desires of the client. While a lawyer must act always with circumspection in order that the lawyer's conduct will not adversely affect the rights of a client in a matter the lawyer is then handling, the lawyer may take positions on public issues and espouse legal reforms favored by the lawyer without regard to the individual views of any client.

## EC 7-18

The legal system in its broadest sense functions best when persons in need of legal advice or assistance are represented by their own counsel. For this reason a lawyer should not communicate on the subject matter of the representation of the client with a person the lawyer knows to be represented in the matter by a lawyer, unless pursuant to law or rule of court or unless the lawyer has the consent of the lawyer for that person. However, a lawyer may properly advise a client to communicate directly with a represented person, if that person is legally competent, without obtaining consent from the represented persons counsel, and may advise a client with respect to those communications (including by drafting papers for the client to present to the represented person), provided the lawyer gives reasonable advance notice to the represented persons counsel that such communications will be taking place. Reasonable advance notice means notice provided sufficiently in advance of the direct client-to-client communications, and of sufficient content, so that the represented persons lawyer has an opportunity to advise his or her own client with respect to the client-to-client communications before they take place. A lawyer who advises a client with respect to communications with a represented person should also advise the client against engaging in abusive, harassing or unfair conduct. A lawyer who is a party or who is otherwise personally involved in a legal matter or transaction, whether appearing pro se or represented by counsel, may communicate with a represented person on the subject matter of the representation pursuant to the provisions of DR 7-104 (A) and (B). If one is not represented by counsel, a lawyer representing another may have to deal directly with the unrepresented person; in such an instance a lawyer should not undertake to give advice to the person who is not represented by a lawyer, except to advise the person to obtain a lawyer.

### Duty of the Lawyer to the Adversary System of Justice

## EC 7-19

Our legal system provides for the adjudication of disputes governed by the rules of substantive, evidentiary, and procedural law. An adversary presentation counters the natural human tendency to judge too swiftly in terms of the familiar that which is not yet fully known; the advocate, by zealous preparation and presentation of facts and law, enables the <u>tribunal</u> to come to the hearing with an open and neutral mind and to render impartial judgments. The duty of a lawyer to a client and the lawyer's duty to the legal system are the same: to represent the client zealously within the bounds of the law.

## EC 7-20

In order to function properly, our adjudicative process requires an informed, impartial <u>tribunal</u> capable of administering justice promptly and efficiently according to procedures that command public confidence and respect. Not only must there be competent, adverse presentation of evidence and issues, but a tribunal must be aided by rules appropriate to an effective and dignified process. The procedures under which tribunals operate in our adversary system have been prescribed largely by legislative enactments, court rules and decisions, and administrative rules. Through the years certain concepts of proper professional conduct have become rules of law applicable to the adversary adjudicative process. Many of these concepts are the bases for standards of professional conduct set forth in the Disciplinary Rules.

## EC 7-21

The civil adjudicative process is primarily designed for the settlement of disputes between parties, while the criminal process is designed for the protection of society as a whole. Threatening to use, or using, the criminal process to coerce adjustment of private civil claims or controversies is a subversion of that process; further, the <u>person</u> against whom the criminal process is so misused may be deterred from asserting legal rights and thus the usefulness of the civil process in settling private disputes is impaired. As in all cases of abuse of judicial process, the improper use of criminal process tends to diminish public confidence in our legal system.

## EC 7-22

Respect for judicial rulings is essential to the proper administration of justice; however, a litigant or lawyer may, in good faith and within the framework of the law, take steps to test the correctness of a ruling of a <u>tribunal</u>.

## EC 7-23

The complexity of law often makes it difficult for a <u>tribunal</u> to be fully informed unless the pertinent law is presented by the lawyers in the cause. A tribunal that is fully informed on the applicable law is better able to make a fair and accurate determination of the matter before it. The adversary system contemplates that each lawyer will present and argue the existing law in the light most favorable to the client. Where a lawyer knows of

controlling legal authority directly adverse to the position of the client, the lawyer should inform the tribunal of its existence unless the adversary has done so; but, having made such disclosure, the lawyer may challenge its soundness in whole or in part.

## EC 7-24

In order to bring about just and informed decisions, evidentiary and procedural rules have been established by tribunals to permit the inclusion of relevant evidence and argument and the exclusion of all other considerations. The expression by a lawyer of a personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused is not a proper subject for argument to the trier of the fact. It is improper as to factual matters because admissible evidence possessed by a lawyer should be presented only as sworn testimony. It is improper as to all other matters because, were the rule otherwise, the silence of a lawyer on a given occasion could be construed unfavorably to the client. However, a lawyer may argue, based on the lawyer's analysis of the evidence, for any position or conclusion with respect to any of the foregoing matters.

## EC 7-25

Rules of evidence and procedure are designed to lead to just decisions and are part of the framework of the law. Thus while a lawyer may take steps in good faith and within the framework of the law to test the validity of rules, the lawyer is not justified in consciously violating such rules and should be diligent in his or her efforts to guard against unintentional violation of them. As examples, a lawyer should subscribe to or verify only those pleadings that the lawyer believes are in compliance with applicable law and rules; a lawyer should not make any prefatory statement before a tribunal in regard to the purported facts of the case on trial unless the lawyer believes that the statement will be supported by admissible evidence; a lawyer should not ask a witness a question solely for the purpose of harassment or embarrassment; and a lawyer should not by subterfuge put before a jury matters which it cannot properly consider.

## EC 7-26

The law and Disciplinary Rules prohibit the use of fraudulent, false, or perjured testimony or evidence. A lawyer who knowingly participates in introduction of such testimony or evidence is subject to discipline. A lawyer should, however, present any admissible evidence the client desires to have presented unless the lawyer knows, or from facts within the lawyer's knowledge should know, that such testimony or evidence is false, fraudulent, or perjured.

## EC 7-27

Because it interferes with the proper administration of justice, a lawyer should not suppress evidence that the lawyer or the client has a legal obligation to reveal or produce. In like manner, a lawyer should not advise

or cause a <u>person</u> to hide or to leave the jurisdiction of a <u>tribunal</u> for the purpose of being unavailable as witness therein.

## EC 7-28

Witnesses should always testify truthfully and should be free from any financial inducements that might tempt them to do otherwise. A lawyer should not pay or agree to pay a non-expert witness an amount in excess of reimbursement for expenses and financial loss incident to being a witness; however, a lawyer may pay or agree to pay an expert witness a reasonable fee for services as an expert. But in no event should a lawyer pay or agree to pay a contingent fee to any witness. A lawyer should exercise reasonable diligence to see that the client and lay associates conform to these standards.

## EC 7-29

To safeguard the impartiality that is essential to the judicial process, members of the venire and jurors should be protected against extraneous influences. When impartiality is present, public confidence in the judicial system is enhanced. There should be no extra judicial communication with members of the venire prior to trial or with jurors during trial or on behalf of a lawyer connected with the case. Furthermore, a lawyer who is not connected with the case should not communicate with or cause another to communicate with a member of the venire or a juror about the case. After the trial, communication by a lawyer with jurors is permitted so long as the lawyer refrains from asking questions or making comments that tend to harass or embarrass the juror or to influence actions of the juror in future cases. Were a lawyer to be prohibited from communicating after trial with a juror, the lawyer could not ascertain if the verdict might be subject to legal challenge, in which event the invalidity of a verdict might go undetected. When an extrajudicial communication by a lawyer with a juror is permitted by law, it should be made considerately and with deference to the personal feelings of the juror.

## EC 7-30

Vexatious or harassing investigations of members of the venire or jurors seriously impair the effectiveness of our jury system. For this reason, a lawyer or anyone on the lawyer's behalf who conducts an investigation of members of the venire or jurors should act with circumspection and restraint.

## EC 7-31

Communications with or investigations of members of families of members of the venire or jurors by a lawyer or by anyone on the lawyer's behalf are subject to the restrictions imposed upon the lawyer with respect to communications with or investigations of members of the venire and jurors.

## EC 7-32

Because of the duty to aid in preserving the integrity of the jury system, a lawyer who learns of improper conduct by or towards a member of the venire, a juror, or a member of the family of either should make a prompt report to the court regarding such conduct.

## EC 7-33

A goal of our legal system is that each party shall have his or her case criminal or civil, adjudicated by an impartial <u>tribunal</u>. The attainment of this goal may be defeated by dissemination of news or comments which tend to influence judge or jury. Such news or comments may prevent prospective jurors from being impartial at the outset of the trial and may also interfere with the obligation of jurors to base their verdict solely upon the evidence admitted in the trial. The release by a lawyer of out-of-court statements regarding an anticipated or pending trial may improperly affect the impartiality of the tribunal. For these reasons, standards for permissible and prohibited conduct of a lawyer with respect to trial publicity have been established.

## EC 7-34

The impartiality of a public servant in our legal system may be impaired by the receipt of gifts or loans. A lawyer, therefore, is never justified in making a gift or a loan to a judge, a hearing officer, or an officer or employee of a <u>tribunal</u> except as permitted by the Code of Judicial Conduct, but a lawyer may make a contribution to the campaign fund of a candidate for judicial office in conformity with the Code of Judicial Conduct.

## EC 7-35

All litigants and lawyers should have access to tribunals on an equal basis. Generally, in adversary proceedings a lawyer should not communicate with a judge relative to a matter pending before, or which is to be brought before, a <u>tribunal</u> over which the judge presides in circumstances which might have the effect or give the appearance of granting undue advantage to one party. For example, a lawyer should not communicate with a tribunal by a writing unless a copy thereof is promptly delivered to opposing counsel or to the adverse party if such party is not represented by a lawyer. Ordinarily an oral communication by a lawyer with a judge or hearing officer should be made only upon adequate notice to opposing counsel, or if there is none, to the opposing party. A lawyer should not condone or participate in private importunities by another with a judge or hearing officer on behalf of the lawyer or the client.

## EC 7-36

Judicial hearings ought to be conducted through dignified and orderly procedures designed to protect the rights of all parties. Although a lawyer has the duty to represent the client zealously, the lawyer should not engage in any conduct that offends the dignity and decorum of proceedings. While maintaining independence, a lawyer should be respectful, courteous, and above-board in relations with a judge or hearing officer before whom the

lawyer appears. The lawyer should avoid undue solicitude for the comfort or convenience of judge or jury and should avoid any other conduct calculated to gain special consideration.

## EC 7-37

In adversary proceedings, clients are litigants and though ill feeling may exist between clients, such ill feeling should not influence a lawyer's conduct, attitude, and demeanor towards opposing lawyers. A lawyer should not make unfair or derogatory personal reference to opposing counsel. Haranguing and offensive tactics by lawyers interfere with the orderly administration of justice and have no proper place in our legal system.

## EC 7-38

A lawyer should be courteous to opposing counsel and should accede to reasonable requests regarding court proceedings, settings, continuances, waiver of procedural formalities, and similar matters which do not prejudice the rights of the client. A lawyer should follow local customs of courtesy or practice, unless he or she gives timely notice to opposing counsel of the intention not to do so. A lawyer should be punctual in fulfilling all professional commitments.

## EC 7-39

In the final analysis, proper functioning of the adversary system depends upon cooperation between lawyers and tribunals in utilizing procedures which will preserve the impartiality of tribunals and make their decisional processes prompt and just, without impinging upon the obligation of lawyers to represent their clients zealously within the framework of the law.

DISCIPLINARY RULES

## DR 7-101 [1200.32] Representing a Client Zealously.

A. A lawyer shall not intentionally:

1. Fail to seek the lawful objectives of the client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7-101 [1200.32] (B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of the client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.

2. Fail to carry out a contract of employment entered into with a client for professional services, but the lawyer may withdraw as permitted under DR 2-110 [1200.15], DR 5-102 [1200.21], and DR 5-105 [1200.24].

3. Prejudice or damage the client during the course of the professional relationship, except as required under DR 7-102 [1200.33] (B) or as authorized by DR 2-110 [1200.15].

B. In the representation of a client, a lawyer may:

1. Where permissible, exercise professional judgment to waive or fail to assert a right or position of the client.

2. Refuse to aid or participate in conduct that the lawyer believes to be unlawful, even though there is some support for an argument that the conduct is legal.

## DR 7-102 [1200.33] Representing a Client Within the Bounds of the Law.

A. In the representation of a client, a lawyer shall not:

1. File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of the client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another.

2. Knowingly advance a claim or defense that is unwarranted under existing law, except that the lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law.

3. Conceal or knowingly fail to disclose that which the lawyer is required by law to reveal.

4. Knowingly use perjured testimony or false evidence.

5. Knowingly make a false statement of law or fact.

6. Participate in the creation or preservation of evidence when the lawyer knows or it is obvious that the evidence is false.

7. Counsel or assist the client in conduct that the lawyer knows to be illegal or fraudulent.

8. Knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule.

B. A lawyer who receives information clearly establishing that:

1. The client has, in the course of the representation, perpetrated a <u>fraud</u> upon a <u>person</u> or <u>tribunal</u> shall promptly call upon the client to rectify the same, and if the client refuses or is unable to do so, the lawyer shall reveal the fraud to the affected person or tribunal, except when the information is protected as a confidence or secret.

2. A <u>person</u> other than the client has perpetrated a <u>fraud</u> upon a <u>tribunal</u> shall reveal the fraud to the tribunal.

# CANON 8. A LAWYER SHOULD ASSIST IN IMPROVING THE LEGAL SYSTEM

## ETHICAL CONSIDERATIONS

### EC 8-1

Changes in human affairs and imperfections in human institutions make necessary constant efforts to maintain and improve our legal system. This system should function in a manner that commands public respect and fosters the use of legal remedies to achieve redress of grievances. By reason of education and experience, lawyers are especially qualified to recognize deficiencies in the legal system and to initiate corrective measures therein. Thus they should participate in proposing and supporting legislation and programs to improve the system, without regard to the general interests or desires of clients or former clients.

### EC 8-2

Rules of law are deficient if they are not just, understandable, and responsive to the needs of society. If a lawyer believes that the existence or absence of a rule of law, substantive or procedural, causes or contributes to an unjust result, the lawyer should endeavor by lawful means to obtain appropriate changes in the law. The lawyer should encourage the simplification of laws and the repeal or amendment of laws that are outmoded. Likewise, legal procedures should be improved whenever experience indicates a change is needed.

### EC 8-3

The fair administration of justice requires the availability of competent lawyers. Members of the public should be educated to recognize the existence of legal problems and the resultant need for legal services, and should be provided methods for intelligent selection of counsel. Those persons unable to pay for legal services should be provided needed services. Clients and lawyers should not be penalized by undue geographical restraints upon representation in legal matters, and the bar

should address itself to improvements in licensing, reciprocity, and admission procedures consistent with the needs of modern commerce.

## EC 8-4

Whenever a lawyer seeks legislative or administrative changes, the lawyer should identify the capacity in which he or she appears, whether on behalf of the lawyer, a client, or the public. A lawyer may advocate such changes on behalf of a client even though the lawyer does not agree with them. But when a lawyer purports to act on behalf of the public, the lawyer should espouse only those changes which the lawyer conscientiously believes to be in the public interest. Lawyers involved in organizations seeking law reform generally do not have a lawyer-client relationship with the organization. In determining the nature and scope of participation in law reform activities, a lawyer should be mindful of obligations under Canon 5, particularly DR 5-101 through DR 5-110. A lawyer is professionally obligated to protect the integrity of the organization by making an appropriate disclosure within the organization when the lawyer knows a private client might be materially affected.

## EC 8-5

Fraudulent, deceptive, or otherwise illegal conduct by a participant in a proceeding before a tribunal or legislative body is inconsistent with fair administration of justice, and it should never be participated in or condoned by lawyers. Unless constrained by the obligation to preserve the confidences and secrets of the client, a lawyer should reveal to appropriate authorities any knowledge the lawyer may have of such improper conduct.

## EC 8-6

Judges and administrative officials having adjudicatory powers ought to be persons of integrity, competence, and suitable temperament. Generally, lawyers are qualified, by personal observation or investigation, to evaluate the qualifications of persons seeking or being considered for such public offices, and for this reason they have a special responsibility to aid in the selection of only those who are qualified. It is the duty of lawyers to endeavor to prevent political considerations from outweighing judicial fitness in the selection of judges. Lawyers should protest earnestly against the appointment or election of those who are unsuited for the bench and should strive to have elected or appointed thereto only those who are willing to forego pursuits, whether of a business, political, or other nature, that may interfere with the free and fair consideration of questions presented for adjudication. Adjudicatory officials, not being wholly free to defend themselves, are entitled to receive the support of the bar against unjust criticism. While a lawyer as a citizen has a right to criticize such officials publicly, the lawyer should be certain of the merit of the complaint, use appropriate language, and avoid petty criticisms, for unrestrained and intemperate statements tend to lessen public confidence in our legal system. Criticisms motivated by reasons other than a desire to improve the legal system are not justified.

## EC 8-7

Since lawyers are a vital part of the legal system, they should be persons of integrity, of professional skill, and of dedication to the improvement of the system. Thus a lawyer should aid in establishing, as well as enforcing, standards of conduct adequate to protect the public by insuring that those who practice law are qualified to do so.

## EC 8-8

Lawyers often serve as legislators or as holders of other public offices. This is highly desirable, as lawyers are uniquely qualified to make significant contributions to the improvement of the legal system. A lawyer who is a public officer, whether full or part-time, should not engage in activities in which the lawyer's personal or professional interests are or foreseeably may be in conflict with the lawyer's official duties.

## EC 8-9

The advancement of our legal system is of vital importance in maintaining the rule of law and in facilitating orderly changes; therefore, lawyers should encourage, and should aid in making, needed changes and improvements.

DISCIPLINARY RULES

## DR 8-101 [1200.42] Action as a Public Official.

A. A lawyer who holds public office shall not:

1. Use the public position to obtain, or attempt to obtain, a special advantage in legislative matters for the lawyer or for a client under circumstances where the lawyer knows or it is obvious that such action is not in the public interest.

2. Use the public position to influence, or attempt to influence, a <u>tribunal</u> to act in favor of the lawyer or of a client.

3. Accept anything of value from any <u>person</u> when the lawyer knows or it is obvious that the offer is for the purpose of influencing the lawyer's action as a public official.

## DR 8-102 [1200.43] Statements Concerning Judges and Other Adjudicatory Officers.

A. A lawyer shall not knowingly make false statements of fact concerning the qualifications of a candidate for election or appointment to a judicial office.

B. A lawyer shall not knowingly make false accusations against a judge or other adjudicatory officer.

### DR 8-103 [1200.44] Lawyer Candidate for Judicial Office.

A. A lawyer who is a candidate for judicial office shall comply with section 100.5 of the Chief Administrator's Rules Governing Judicial Conduct (22 NYCRR) and Canon 5 of the Code of Judicial Conduct.

## CANON 9. A LAWYER SHOULD AVOID EVEN THE APPEARANCE OF PROFESSIONAL IMPROPRIETY

ETHICAL CONSIDERATIONS

### EC 9-1

Continuation of the American concept that we are to be governed by rules of law requires that the people have faith that justice can be obtained through our legal system. A lawyer should promote public confidence in our system and in the legal profession.

### EC 9-2

Public confidence in law and lawyers may be eroded by irresponsible or improper conduct of a lawyer. On occasion, ethical conduct of a lawyer may appear to non-lawyers to be unethical. In order to avoid misunderstandings and hence to maintain confidence, a lawyer should fully and promptly inform the client of material developments in the matters being handled for the client. While a lawyer should guard against otherwise proper conduct that has a tendency to diminish public confidence in the legal system or in the legal profession, the lawyer's duty to clients or to the public should never be subordinate merely because the full discharge of the lawyer's obligation may be misunderstood or may tend to subject the lawyer or the legal profession to criticism. When explicit ethical guidance does not exist a lawyer should determine prospective conduct by acting in a manner that promotes public confidence in the integrity and efficiency of the legal system and the legal profession.

### EC 9-3

A lawyer who leaves judicial office or other public employment should not thereafter accept employment in connection with any matter in which the lawyer had substantial responsibility prior to leaving, since to accept employment would give the appearance of impropriety even if none exists.

### EC 9-4

Because the very essence of the legal system is to provide procedures by which matters can be presented in an impartial manner so that they may

be decided solely upon the merits, any statement or suggestion by a lawyer that the lawyer can or would attempt to circumvent those procedures is detrimental to the legal system and tends to undermine public confidence in it.

## EC 9-5

Separation of the funds of a client from those of the lawyer not only serves to protect the client but also avoids even the appearance of impropriety, and therefore commingling of such funds should be avoided.

## EC 9-6

Every lawyer owes a solemn duty to uphold the integrity and honor of the profession; to encourage respect for the law and for the courts and the judges thereof; to observe the Code of Professional Responsibility; to act as a member of a learned profession, one dedicated to public service; to cooperate with other lawyers in supporting the organized bar through devoting time, efforts, and financial support as the lawyer's professional standing and ability reasonably permit; to act so as to reflect credit on the legal profession and to inspire the confidence, respect, and trust of clients and of the public; and to strive to avoid not only professional impropriety but also the appearance of impropriety.

DISCIPLINARY RULES

## DR 9-101 [1200.45] Avoiding Even the Appearance of Impropriety.

A. A lawyer shall not accept private employment in a matter upon the merits of which the lawyer has acted in a judicial capacity.

B. Except as law may otherwise expressly permit:

1. A lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, and no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless:

    a. The disqualified lawyer is effectively screened from any participation, direct or indirect, including discussion, in the matter and is apportioned no part of the fee therefrom; and

    b. There are no other circumstances in the particular representation that create an appearance of impropriety.

2. A lawyer having information that the lawyer knows is confidential government information about a person, acquired when the lawyer was a public officer or

employee, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person. A <u>firm</u> with which that lawyer is associated may knowingly undertake or continue representation in the matter only if the disqualified lawyer is effectively screened from any participation, direct or indirect, including discussion, in the matter and is apportioned no part of the fee therefrom.

3. A lawyer serving as a public officer or employee shall not:

a. Participate in a matter in which the lawyer participated personally and substantially while in private practice or non–governmental employment, unless under applicable law no one is, or by lawful delegation may be, authorized to act in the lawyer's stead in the matter; or

b. Negotiate for private employment with any <u>person</u> who is involved as a party or as attorney for a party in a matter in which the lawyer is participating personally and substantially.

C. A lawyer shall not state or imply that the lawyer is able to influence improperly or upon irrelevant grounds any <u>tribunal</u>, legislative body, or public official.

D. A lawyer related to another lawyer as parent, child, sibling or spouse shall not represent in any matter a client whose interests differ from those of another party to the matter who the lawyer knows is represented by the other lawyer unless the client consents to the representation after full disclosure and the lawyer concludes that the lawyer can adequately represent the interests of the client.

## Notice to the Attorney

The Affiant states that any instruction and/or statement that is included herein the Attorney shall have the ability to decline to pursue provided that the Attorney can show within the law how the instruction is not allowed further what evidence is relied upon to show Bad faith and or frivolous actions, failure by the Attorney to challenge the instructions and/or statements in the above described manner in written form sent by certified mail to the Affiant address within 10 calendar days of receiving this document.   Failure by the Attorney to Challenge the instructions and/or statements shall be deemed to be that all instructions are permissible and actionable by the Attorney in this matter and that all statements are unrebutted by the Prosecutor and/or the Court in the matter of [STATE-OF-NEW-YORK: KINGS-COUNTY: STATE-SUPREME-COURT: DOCKET: 0046-2010] and further that there are no Frivolous and/or Bad Faith issues raised by the Affiant.

## Caveat

Any  action as a principal or accessory after the fact by Counsel that leads to Affiant being held/ordered held. Or for a STATE OF NEW-YORK CRIMINAL PROCEDURAL LAW SECTION 730/psychological examination or a continuance of a previous order for a STATE OF NEW-YORK CRIMINAL PROCEDURAL LAW SECTION 730/psychological examination against the Affiant as a result or indirect result of the receiving of the Affidavit-Of-Truth of the stating-herein or any Non-rebuttal of/or-no: written: point for point response-to the Affidavit-Of-Truth of the stating-herein by  Counsel, agent, assigns/et.al, that is sworn/affirmed, subscribed, and verified under penalty-of- perjury affixed therein the rebuttal/written-response within(10)-calendar-days is acting in bad-faith, breach of faith, prima facie evidence of breach of contract, prima facie evidence of  grounds for a mistrial, and prima facie evidence of civil rights violations under Federal statute in a manner that is knowingly, voluntarily, willingly, deliberately, maliciously and intentionally done by Counsel.

```
    -County         )
                      ) A.S.:
New-York-State    )
```

## Verification

For the knowing of the all of the men and women of the Deric-Nelson duly affirming, deposing, and saying of the all of the presents of the stating-herein with the first-hand-knowledge of the True, correct, and complete: facts with the full-disclosure under penalty-of perjury.

For the knowing of the all of the men and women of the Deric-Nelson duly attesting and verifying of the all of the presents of the stating-herein with the first-hand-knowledge of the True, correct, and complete: facts with the full-disclosure under the penalty-of-perjury.

_Deric Nelson_

AR: Deric Nelson - Affiant

By the affirming before-me on the _18 April 2013_   in the _Suffolk_ County

in the New-York-State.

Notary-Public

My Commission Expires on _0/30/15_

AMARESH N. KACHHY
Notary Public, State of New York
No. 484395 Qualified in Suffolk County
Commission Expires March 30 _7/30/15_

Page **44** of **44**

EX·D

Docket No.     00046-2010

CRIMINAL TERM ARR/MOT
SUPREME COURT KINGS

2013 MAY 13  PM 4:27

ATTENTION: COUNTY OF KINGS, CHIEF JUDGE HON. JOHNATHAN LIPPMAN, HON. ANN M. DONNELLY J.S.C., HON. Joel M. Goldberg  J.S.C,  DISTRICT ATTORNEY CHARLES J. HYNES

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS : CRIMINAL TERM : PART
---------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK

-against-

DERIC NELSON,

                                    Defendant.
---------------------------------------------------------x


### NOTICE OF DISHONOR AND DEFAULT

To: Damien Brown, Esq
From: Deric Nelson
In Re: Docket No. 00046-2010
 Claim No. DN051813


   I Deric Nelson (Aggrieved Party Plaintiff), serve this lawful notice of dishonor and default upon Damien Brown, Esq (Defendant) in regards to Claim-Number: DN051813 titled ''**Constructive Notice to attorney Instructions for Representation for Deric Nelson**'', and docket: 00046-2010.
 *Certified mail # 42011238950710002543310800158*


### PRELIMINARY STATEMENT

   1.     Based on repeated attempts to remedy the dispute between the parties the following facts are binding upon receipt and serve as a means to provide a compensatory award to the plaintiff.

OFFICE OF
DISTRICT ATTORNEY
KINGS COUNTY
5/13-13

2.     The aggrieved party Deric Nelson has exhausted all possible remedies in having Damien Brown, Esq provide the proper representation in the matter of docket: 00046-2010.

3.     The aggrieved party has sought various forms of legal advice from the defendant in regards to representation maintaining his rights to due process, and equal protection afforded to him by the United States Constitution and the Constitution for the State of New York.

4.     Claim-Number: DN051813 "**Constructive Notice to attorney Instructions for Representation for Deric Nelson**" dated April 18, 2013 was served upon the defendant and the time allotted for a lawful response has been breached.

5.     Based upon attorney/client privileges it was the duty of the defendant to assure the plaintiff had every possible remedy presented in regards to specific civil rights violations carried out by various officers in County of Kings.

6.     Pre-trial hearings were requested by the aggrieved party yet have been avoided in an attempt by the defendant to assist County of Kings in convicting him for crimes he maintains he did not commit.

7.     The hearings requested by the aggrieved party as a defense include **Mapp/Dunaway**, **Huntley**, and **Sandoval**.

8.     The aggrieved party also requested the defendant to demand a conference in regards to the absolute breach of the speedy trial statues of **NYS C.P.L. § 30.30** by County of Kings District Attorney Charles J. Hyne.

9.     The aggrieved party plaintiff maintains that he was not given a lawful invitation to testify on his behalf during the grand jury indictment that was charged against him by his accusers a violation of **42 USC § 1983, & 1985**.

10.     Pleadings submitted by the aggrieved party show beyond a reason of a doubt that tax statements have been falsified by County of Kings in regards to the property in question in the case dockets.

11.     The New York State Department of Taxation and Finance estimated the worth of the property in question to be valued at over **$1,000,000**.

12.     The fact that the dispute between the parties involves allegations of falsifying records in the County of Kings in regards to ownership of said property it is the duty of the defendant to notify the Federal Government.

13.    Any falsified tax statement filed with the **I.R.S.** in regards to mortgage backed securities made by Bernard Shafran, and later recorded by County of Kings in the municipal State of New York acts as a violation of the **Trust Indenture Act of 1939 (TIA), codified at 15 U.S.C. § 77aaa through 15 U.S.C. § 77bbbb.**

14.    Based on Federal law and the dispute between the parties exceeding an amount of **$75,000** in unison with the facts acts as a direct reason why this notice of dishonor and default is meritorious.

13.    The various violations of the plaintiff's rights to due process, and the deliberate continuation of the proceedings in **SUPREME COURT OF THE STATE OF NEW YORK COUNTY OF KINGS** serves as a cause of action as to why Damien Brown, Esq in his official capacity has not notified a higher authority.

14.    The facts presented to the defendant by the aggrieved party plaintiff in this matter of default officially brings the matters held before the County of Kings, Supreme Court into the Federal venue.

15.    Diversity jurisdiction makes it is the duty of Damien Brown, Esq at his official capacity to move the Court to a Federal proceeding on behalf of Deric Nelson as his representation regardless of any disputes stemming from this notice.

14.    Based upon the aforementioned facts and the facts provided previously submitted to the defendant via ''**Constructive Notice to attorney Instructions for Representation for Deric Nelson,** the following demands are to be honored within 72 hours from receipt notice;

   a) The aggrieved party demands a sum to be paid by the defendant no less than $1,000,000.

   b) The aggrieved party demands a sum to be paid by the defendant no less than $50,000 for every individual attempt made after receipt of notice to construe any pleadings of DERIC NELSON, or barring the aforementioned pre-trail hearings in regards to case docket: 00046-2010.

   c) The aggrieved party demands that Damien Brown, Esq. contact the Federal Government on behalf of Deric Nelson immediately upon receipt of this notice in regards to County of Kings, and its officials violation of **42 USC § 1983, & 1985** in unison with the **Trust Indenture Act of 1939 (TIA), codified at 15 U.S.C. § 77aaa through 15 U.S.C. § 77bbbb.**

3

d) The aggrieved party demands that if the defendant does not make proof of his notifying a higher authority in the Federal Government after 72 hours of notification that he be disbarred from practicing law in the State of New York for his participation with County of Kings in falsifying I.R.S. statements.

## STATEMENT OF FACTS

15.    DERIC NELSON demanded that DAMIEN BROWN, ESQ move to suppress evidence of the alleged statements attributable to him in the docket in question via CPL 710.60

16.    The statements alleged to have been made or not by DERIC [NELSON] were the result of an illegal seizure, taken during a custodial interrogation, obtained coercion, without administration of Miranda warnings, after the police had already agreed not to speak to the defendant concerning the case, and without knowing, voluntary and intelligent waiver of the defendant's Miranda rights.   This was all done in violation of DERIC NELSON'S State and Federal Constitutional rights.

17.    No sworn allegations of fact were necessary and a hearing should have been demanded by his representation 710.60.

18.    The defendants total disregard for the aggrieved party plaintiff's rights have thus far placed him at risk to be prosecuted for crimes that he did not commit.

19.    Damien Brown, Esq was notified of specific lawful guidelines that were to be followed during his course of representation of the aggrieved party plaintiff via "**Constructive Notice to attorney Instructions for Representation for Deric Nelson**".

20.    The notice sent to the defendant was in order to assure that the aggrieved parties rights to due process, and equal protection secured by the United States Constitution and the Constitution of the State of New York were maintained during the course of all proceedings held in regards to the charges levied against the plaintiff.

21.    The demand that the aggrieved party asserted via "**Constructive Notice to attorney Instructions for Representation for Deric Nelson**" were to assure that specific pre-trial hearings be held to determine the practices of County of Kings District Attorney Detectives during the course of his arrest, and detention based on allegations made against the plaintiff.

4

22.     County of Kings has used its' delegated authority to assist the aggrieved parties representation in construing his pleadings and bar the prosecution in the case from liabilities that may be obtained for its malpractice in criminal procedure law.

23.     On April 24, 2013 the aggrieved party was present at **SUPREME COURT OF THE STATE OF NEW YORK COUNTY OF KINGS** and Damien Brown, Esq. against the plaintiff's best interest assisted the prosecutor in an attempt to convince the plaintiff into having a trial without a jury of his peers.

24.     The attempt to conduct a trial proceeding by the defendant, without administrating in the plaintiff's best interest specific pre-trial hearings acted as a breach of Trust.

25.     Damien Brown, Esq. was fully made aware that the aggrieved party demanded a Mapp/Dunanway, Huntley, and Sandoval hearing to determine the events that occurred leading to his subsequent arrests and detentions, and if these hearing could not be done Brown was suppose to notify the aggrieved party in writing why these hearings could not be legally or lawfully heard in NYS Supreme Court Kings County.

26.     The aggrieved party also asserted demands for a hearing to have the charges against him dismissed based upon **NYS C.P.L. § 30.30** for the prosecutions lack of providing a speedy trial.  The defendant failed to comply, instead insisted that the aggrieved party comply with Justices' Joel M. Goldberg reading into the record his notes, that were passed down to him from other Justices in Kings County Supreme Court parts, and  Justice  Goldberg did not make, and would not make, a sworn statement, under penalties of Perjury into the record, but instead  read into the record his notes, which he said, he believed that after 3years and 4 months that the Prosecution was only charged 90 days, and that they were ready to go to trial, with no other prove or documents.   Damien Brown Esq, tried to convince the aggrieved party to consent with justice Goldbergs' 90 days statement, and get him to give up his pre-trial hearing and especially the hearing for Lack of speedy trial CPL 30.30, he even tried to convince him to  Plead guilty to stealing  his own building where he would not go to jail and would be out on probation, instead of objecting on the record like the  aggrieved party insisted several times, defendant said just listen to what the Justice Goldberg is trying to offer you.  Damien Brown esq.  has not produced the Transcripts that he promised, so that aggrieved party can visually sit down and inspect and discuss the records with him, because council was told  from the beginning that the aggrieved wanted to  be part of every decision that was to be

made on this case and that they must sit down and discuss every aspect of this case. Counsel had to get the approval of the aggrieved party in writing before he entered anything into the record or tried to dismiss any Writs or motions, off the record. Instead during and after the last court date Damien Brown esq. insist on telling the aggrieved party to think about pleading guilty or going to trial without a Jury of his peers. He has not reached out to the aggrieved by phone or by mail, and has not returned any phone calls and had canceled his meeting with the aggrieved and was never available when aggrieved called his office or even stopped by, which was on numerous occasions. By not following these directions, makes him equitably liable to the plaintiff in these matters.

27.    Damien Brown, Esq. by failing to protect Deric Nelson's best interest during the proceedings in question made him directly a party to County of King's violation of **42 USC § 1983, & 1985** in unison with the **Trust Indenture Act of 1939 (TIA), codified at 15 U.S.C. § 77aaa through 15 U.S.C. § 77bbbb.**

## OBSERVATIONS AND EVIDENCE

28.    Deric Nelson was not violating any laws when arrested by Kings County District Attorney Detectives. His seizure was done without probable cause, reasonable suspicion or articulable basis. Deric [Nelson] maintains that he was not violating in New York State Laws. Deric [Nelson] was interrogated and then arrested without any explanation.

29.    Since the law is well settled that any warrantless search and seizure is per se unreasonable, and thus unconstitutional, the heavy burden rest on the People to demonstrate by clear and convincing evidence that one of the carefully delineated exceptions to the warrant clause exist. See **People v. Baker**, 23 N.Y. 2d 319; **People v. Mahoney**, 16 A.D.2d 107, **Davis v. Mississippi**, 393 U.S. 821; **Crews v. United States**, 440 U.S. 907.

30.    Based upon the aggrieved parties representation failing to have the Court hold a **Mapp/Dunaway** hearing it is evident that an attempt to commit fraud has taken place on the part of Damien Brown, Esq.

31.    Absolute proof of the previous fact is it is well settled in law that the mere interrogation of the defendant after he expressed a right to be set at liberty is in and of itself a "seizure, within the meaning of the 4th Amendment of the U.S. Constitution and Article 12 of the New York State which requires "reasonable suspicion."

32. The denial of the demands for a pre-trial hearing by Damien Brown Esq. on the issues of the aggrieved party being seized acted as a violation of his Fourth Amendment rights, as well as his State Constitution Rights which would require the plaintiff to go through an entire trial to ascertain whether there was a basis for police in the seizure of the defendant. This not only causes a citizen to incur extensive trial expenses, but also, more importantly, is an uneconomical use of the court's time. The only way to suppress a person's seizure under the U.S. Constitution and the State Constitution is by way of a pre-trial hearing.


## Punitive Damages

33. The aggrieved party asserts that he had no criminal history that substituted him every accepting the acts committed against him by John Doe District Attorney Detectives, and Damien Brown Esq. was made totally aware of this on numerous occasions.

34. Damien Brown Esq. had a duty to protect the plaintiff from incurring a criminal history that was not supported by the facts and failed to do so.

35. WHEREFORE, the aggrieved party demands the following relief jointly and severally against all the parties:

(a) A declaration from Damien Brown, Esq. that County of Kings and its officers violated the plaintiff's Civil Rights;

(b) Compensatory damages for the physical and emotional injuries suffered by the plaintiff. By reason of the defendants unlawful and unjustified conduct, in an amount equal to line 14 sections (a), and (b);

(c) For such other, further and different relief as is just and proper under the circumstances to be held in a Federal Court proceeding.

WHEREFORE, I COMMAND that an Order be entered consistent with the foregoing, or that a hearing is ordered to determine the issues asserted herein.

Dated:   March 29, 2013

I Am: _Deric_ _[Nelson]_ (Pro Se) - All Rights Reserved Without Prejudice.

DERIC [NELSON]   April 13, 2013

P.O. BOX 654

Hicksville NY 11802

Sworn to before me this

13th day of April, MAY 2013

NOTARY PUBLIC

KAMAL P. SONI
Notary Public, State of New York
No. 01SO6089949
Qualified in Kings County
Commission Expires March 31, 2015

Screening date: **December 28, 2009**

.180.80 Date: **12/31/09**

GJ Date: **12/31/09**     GJ Time:**09:00**

## Defendants

| Name - Last, First | Arrest Number | Sex | DOB | Age | Complaint/DP | Class | |
|---|---|---|---|---|---|---|---|
| NELSON, DERIC | K09720135 | M | 09/25/70 | 039 | 1 | Felony | Grand Jury |
| Gang member ☐ | | | | | | | |

## TPOs

| | Date/Time | Place | PCT | Near School (if narcotics sale) |
|---|---|---|---|---|
| 1 | 10/31/09 00:00  to: 11/5/09 0:00 | 210 JORALEMON STREET, BROOKLYN, NY | 084 | ☐ |

## Arrests

| Defendant | Date/Time | Place |
|---|---|---|
| NELSON, DERIC | 12/28/09   15:25 | 350 JAY STREET |

Circumstances: DEFENDANT VOLUNTARILY CAME TO 350 JAY STREET TO MEET DETECTIVE ALIYEV.

Arrest Charges:  PL 1554200  PL 1751000  PL 1753000

## Complaint Charges

| NELSON, DERIC | TPO 1 | PL 110/155.42, PL 175.10, PL 175.35 |
|---|---|---|

### REAL ESTATE FRAUD - DEFENDANT FILES FRAUDULENT DEED ATTEMPTING TO STEAL REAL PROPERTY VALUED OVER $1 MILLION

C/W BERNARD SHAFRON IS THE PRINCIPAL OF 467-469 VANDERBILT LLC.

IN 2004, C/W SHAFRON'S LLC PURCHASED 467-469 VANDERBILT AVENUE FROM DEFENDANT. AT THE TIME, THERE WAS ONLY A VACANT SUPERMARKET ON THE PREMISES. C/W PAID $200,000 FOR THE PROPERTY.  A DEED WAS FILED IN MARCH OF 2004 REFLECTING THIS SALE.

AFTER C/W'S LLC PURCHASED THE PROPERTY, THE LLC DEVELOPED THE PARCEL INTO 8 NEW CONDOMINIUM APARTMENTS AND 2 COMMERCIAL SPACES.  C/W'S LLC RENTED THE 8 APARTMENTS TO VARIOUS TENANTS AND LEASED THE COMMERCIAL SPACE TO DEFENDANT IN EXCHANGE FOR MONTHLY RENT.

IN SEPTEMBER OF 2009, THE C/W'S FILED AN ACTION IN LANDLORD TENANT COURT TO EVICT DEFENDANT FROM THE COMMERCIAL SPACE FOR NON-PAYMENT OF RENT.

IN NOVEMBER OF 2009 - DEFENDANT FILED A NEW DEED WITH THE CITY REGISTER'S OFFICE. THE DEED IS SIGNED BY DEFENDANT AND IS PURPORTEDLY DATED JANUARY 21, 2004 (THE SAME DAY AS THE SALE TO C/W SHAFRON'S LLC).  THIS DEED IS FRAUDULENT. IN THIS DEED, THE DEFENDANT HOLDS HIMSELF OUT AS THE CURRENT OWNER OF THE PREMISES AND PURPORTS TO TRANSFER TITLE FROM DEFENDANT TO DEFENDANT.

AS A RESULT OF THIS FILING, THE NEW YORK CITY LAND RECORDS WERE AUTOMATICALLY CHANGED TO LIST DEFENDANT AS THE CURRENT OWNER OF 467-469 VANDERBILT AVENUE.

HOWEVER, THE DEED WAS NOT IN FACT PREPARED ON JANUARY 21, 2004 - THIS IS FRAUDULENT. WE KNOW THIS BECAUSE THE SUPPORTING DOCUMENTATION FILED ALONG WITH THIS DEED (THE REAL PROPERTY TRANSFER REPORT, ETC.) SHOW THAT THE DOCUMENTS WERE ACTUALLY ELECTRONICALLY CREATED ON OCTOBER 31, 2009. THE DOCUMENT COULD NOT HAVE BEEN EXECUTED ON JANUARY 21, 2004 AS IT DID NOT EVEN EXIST AS OF THIS DATE.

FURTHERMORE, THE SUPPORTING DOCUMENTATION FOR THIS DEED (WHICH IS ALSO DATED JANUARY 21, 2004 AND SIGNED BY THE DEFENDANT) LISTS BLOCK AND LOT INFORMATION THAT DID NOT EXIST IN 2004. THE BLOCK AND LOT INFORMATION LISTED PERTAINS TO THE NEWLY DEVELOPED CONDOS AND COMMERCIAL SPACE.

IMMEDIATELY AFTER FILING THIS DEED, THE DEFENDANT ASSERTED HIMSELF AS THE OWNER OF THE PREMISES. HE CHANGED THE LOCKS TO THE BUILDING. HE ALSO PASSED LETTERS OUT TO THE TENANTS INSTRUCTING THEM THAT HE WAS THE NEW LANDLORD OF THE BUILDING AND THAT THE TENANTS WERE TO PAY RENT TO HIM. THE DEFENDANT ALSO FIRED THE BUILDING'S SUPER, THREATENING TO CALL THE POLICE IF THE SUPER RETURNED TO THE PREMISES.

THE DEFENDANT HAS BEEN HANGING OUT IN THE BUILDING LOBBY ALMOST EVERY NIGHT SINCE THE DEED WAS FILED.

ACCORDING TO THE NYC DEPARTMENT OF FINANCE, THE PREMISES AT 467-469 VANDERBILT IS VALUED IN EXCESS OF $1,000,000 FOR THE 2009-2010 TAX YEAR.

## Reporters

| TPO | Reporter | Date Reported | Method |
|---|---|---|---|
| 1 | BERNARD SHAFRON | 12/7/09 0:00 | called PCT |
| | Delay in Report ☐ | | |

## Witnesses

| Name | Age/Gender | Defendant | Relationship to Defendant |
|---|---|---|---|
| BERNARD SHAFRON | M | DERIC NELSON | None |

1    SUPREME COURT OF THE STATE OF NEW YORK

2    COUNTY OF KINGS: CRIMINAL TERM:   PART 22

3    ----------------------------------------X

4    THE PEOPLE OF THE STATE OF NEW YORK,         :
                                                  :
5              -against-                          :INDICTMENT NO.
                                                  : 0046/2010
6    DERIC B. NELSON,                             :
                                                  :
7                                                 :
                                                  :
8                            DEFENDANT.           :
     ----------------------------------------X

9                          320 Jay Street
                           Brooklyn, New York
10                         April 24, 2013

11   B E F O R E:      THE HONORABLE JOEL M. GOLDBERG
                           Justice of the Supreme Court
12

13   A P P E A R A N C E S:

14   OFFICE OF CHARLES HYNES, ESQ.
     DISTRICT ATTORNEY - KINGS COUNTY
15   Attorney for the People
            350 Jay Street
16          Brooklyn, New York 11201
     BY:    LIZ KURTZ, ESQ.
17          Assistant District Attorney

18

19   Law Offices of Damien Brown
     Representing defendant
20   26 Court Street
            Brooklyn, New York  11201
21   BY:   DAMIEN BROWN, ESQ.

22                                    TERI MALTESE
23                              Senior Court Reporter

24

25

PROCEEDINGS

1                 (Whereupon, the following takes place

2         on the record in open court in the presence of

3         the Court, the assistant district attorneys,

4         defense counsel and Deric B. Nelson.)

5                 COURT CLERK:  On the trial a.m. calendar,

6         calendar number one, Deric B. Nelson.  This defendant

7         is at liberty, on bail, comes before the court.

8                 MS. KURTZ:  Office of the District Attorney

9         by Liz Kurtz, K U R T Z.

10                MR. FARRELL: Also for the Office of the

11        District Attorney by Richard Farrell,

12      F A R R E L L. Good morning.

13                THE COURT:  Good morning.

14                MR. BROWN:  On behalf of Deric Nelson, Damien

15        Brown.  Good morning.

16                THE COURT:  All right.  We had a conference

17        at the bench.  Some things were explained to me and I

18        would just like to let Mr. Nelson hear them, okay?

19                THE DEFENDANT:  Yes, please.

20                THE COURT:  Mr. Nelson, it is my

21        understanding that you believe you still own these

22        buildings and that the buildings were wrongfully

23        taken from you.

24                THE DEFENDANT:  You want me to talk?

25                THE COURT:  No, I don't want you to talk

tm

1    because anything you say could be a problem for you.

2    If you can speak to your lawyer and your lawyer can

3    correct me, okay?

4         THE DEFENDANT: Okay.

5         THE COURT:  This is my understanding.  You

6    believe the buildings were wrongfully taken from you

7    and you owned them all along and all you did when you

8    filed these papers, allegedly filed these papers,

9    don't even say you filed these papers -- please,

10   well--

11        THE DEFENDANT:  I didn't file these papers.

12        THE COURT:  Don't say anything, okay?  Even

13   if you do own the buildings, it would be a crime for

14   someone to file false papers about them in an attempt

15   to get them back.  The way to get the building back

16   is for you to sue to get the changes that were done

17   in a civil proceeding.  What you're being charged

18   with here has to do with, among other things, filing

19   false papers even if the building is, in fact, yours.

20   That's what the charges are.

21        The prosecution would recommend, if there was

22   some kind of guilty plea, perhaps not even requiring

23   an admission that you don't own the building.  Maybe

24   some kind -- use a legal expression, maybe some kind

25   of Serrano plea or Alford plea as to not prejudice

PROCEEDINGS

the defendant in any civil lawsuit that he might
bring and that would just end this.  Because even if
you're found not guilty here, you're not going to get
the buildings back.  Even if you're found not guilty
here, you're not going to get the buildings back.
So, there's no point in this for you.

If what you're doing is trying to get the
buildings back, even if you're found not guilty,
you're not going to get the buildings back.  You're
going to have to bring a lawsuit to get the buildings
back.  What you're risking here, what you're risking
here is if you are found guilty, you won't get the
buildings back because any finding here would prevent
you from getting the buildings back.  So, there's
nothing to gain for you.  If you go to trial, and the
possibility is if you're convicted here, you lose the
buildings.  Plus, if you're convicted, I have a
decision about what type of sentence to impose.  So
that's the position we're in.

Also, you filed your own papers here as sort
of a motion.  I can't accept it because you have an
attorney.  If your attorney wants to file a motion,
that's one thing.  I don't accept -- and the Court
does not accept papers from defendants who have
attorneys.  You can't have two heads running the

tm

PROCEEDINGS

1          show, all right?

2                  So, it doesn't appear we can resolve this

3          case.  I previously said June 17th for trial.  I

4          won't be available on June 17th so I will change the

5          date to June 18th for trial.

6                  Now, as far as hearings before trial are

7          concerned, the prosecution is not introducing any

8          property that was allegedly taken from you.  So,

9          there's no motion to suppress property as a result of

10         an illegal search because there was no property that

11         was taken.  They're not introducing any statements

12         that you made to the police concerning any admissions

13         or anything like that so there's no hearings

14         concerning admissions.  There's no identification

15         procedure that was held prior to trial.  There are no

16         lineups, no photographic identification.  So there's

17         no identification hearing to be held.  There are no

18         pretrial hearings.

19                 So, that is my understanding about the case.

20         Mr. Brown, you wish to say anything.

21                 MR. BROWN:  Yes, I do.  On behalf of my

22         client, he would like your Honor to know, this is

23         something I did relate to you at the bench that due

24         to me being on a five week trial where there were

25         many issues that arose at the last minute, my

tm

schedule did not permit for myself and Mr. Nelson to
meet.  We did set up, I believe, two appointments,
might have been three.  On two of them I could not
meet with him.  One of them he was extremely late and
I had to leave by that time.

          THE DEFENDANT:  Within an hour.  And you were
supposed to call me when you got in the office.

          MR. BROWN:  Okay.  Either way, I was not able
to meet.  I told Mr. Nelson I was sorry about that,
that sometimes things arise.  I did not expect a two
week trial to stretch into five weeks.

          I will meet with him to explain all of this
that has been explained two times.  I will say that
Mr. Nelson -- it does not appear that he's
understanding about the hearings.  He wishes -- he
wishes a Mapp Dunaway for--

          THE COURT:  For property?

          MR. BROWN:  To search somebody and to show
that the recovery of property from your person or
your house or car or something under your control --
wait, wait, wait, let me finish please.

          THE DEFENDANT:  Okay.

          MR. BROWN:  Okay.  You get that hearing, that
type of hearing, if they've taken something from
you--

                          tm

7

PROCEEDINGS

THE COURT:  What property does he want suppressed?

MR. BROWN:  So, you need to have something--

THE COURT:  What property do you want suppressed?

THE DEFENDANT:  Well, basically the DA detectives were questioning me.  They didn't read me Miranda rights, that is number one.

THE COURT:  Listen, they're not going to tell the jury anything that you said to them.

THE DEFENDANT:  Okay.

MR. BROWN:  If the People could just put that on the record?

THE COURT:  Am I correct?

MS. KURTZ:  Your Honor, I believe the People said this the last time we were here, but we are not seeking to introduce the statement by Mr. Nelson.

THE COURT:  Keep the answers as concise as possible so we can move on.

MR. BROWN:  Are there statements that the People intend to introduce at trial?

THE DEFENDANT:  Can we put that in writing and can we swear to it?

THE COURT:  No, we can't. Listen, you don't run the show, Mr. Nelson.

PROCEEDINGS

THE DEFENDANT:  Okay.

THE COURT:  You hear me?  You're not running the show, so forget about that kind of demand.  We are going to have a trial.  You are not getting your hearings and you're going to get exactly what you deserve if you get a trial.

MR. BROWN:  There is no 30.30.

THE COURT:  There is no 30.30 motion.  I ruled on it. He made a motion, I ruled on it.  You made a motion, I ruled on it.

THE DEFENDANT:  You ruled on it.  Can you put that on again?

THE COURT:  I put it on the last time when I went through everything, remember?

THE DEFENDANT:  You put 90 days. I disagreed and he promised me paperwork, the transcripts that would tell me.  We can go through it because I have a right--

THE COURT:  That issue is over.

THE DEFENDANT:  I have a right, don't I?

THE COURT:  Now you have an appeal.  That issue is over.

MR. BROWN:  If you are convicted then you can go to a Higher Court where there are more judges reviewing this judge's decisions.

tm

PROCEEDINGS

THE COURT:  Now that you're through stalling, are you going to get ready to go to trial on June 18th?  You are going to wake up and you're going to go to trial on June 18th.  I can't be here on the 11th.  We are going to the 18th.

MR. BROWN: For the record, he does not consent to a trial without pretrial -- but we -- pretrial hearings but we already dealt with that.

THE COURT:  Mr. Nelson, I want to congratulate you.  You know why?  Because every pretrial hearing that you wanted to get you won.  You won.  They're not introducing any property, so you won the Mapp Dunaway, congratulations; they're not introducing any statements, so you won the Huntley Hearing; they are not introducing any out of court identification, so you won the Wade Hearing.  You won all three without even a hearing, you're terrific.

THE DEFENDANT:  Thank you, sir.

MS. KURTZ:  Your Honor--

THE COURT:  Congratulations.  You wasted a lot of time and a lot of paper preparing the motion.

MS. KURTZ:  People are requesting Parker Warnings given the defendant's warrant history.

THE COURT:  Mr. Nelson, this was scheduled to go to trial June 18th.  If you're not here -- this is

tm

PROCEEDINGS                                                    10

standard, I expect you to be here.  Could you listen
to me?  I'm talking to you.  I want your full
attention.

THE DEFENDANT:  Okay, you got it.

THE COURT:  You're scheduled to go to trial
June 18th. It may be postponed, but you're scheduled
for June 18th.  You have a right to be here for
trial.  If you're not here, there's bail that's been
put up, you know.  If you're not here, you can lose
the bail and the people that put up the money will
lose that.

THE DEFENDANT:  Jury trial.

THE COURT:  Mr. Nelson, I'm talking to you.
Can I get your attention for more than five seconds?

THE DEFENDANT:  Yes, sir.

THE COURT:  You don't think that what I'm
saying is worth it?

THE DEFENDANT:  Yes, it is, continue.

THE COURT:  Are you sure?  You might have to
be quiet for a minute, have you ever done that in
your life?  If you're not here, a warrant will be
issued for your arrest.  There can be an additional
crime for bail jumping.

Plus, if we don't know where you are, we can
assume that you decided to waive your right to be

                              tm

for the trial and the trial will go on

without you.  You lose all your rights to hear the

witnesses testify, to assist your attorney, to

testify in your own defense if that's what you wanted

to do.  If you can't be here on June 18th or any

other day let your attorney know where you are, okay?

Because if there's some reason why you can't

be here, you're sick, something like that, then the

trial won't go on, all right?  So I'm just letting

you know that you should not fail to appear in court

without letting your attorney know where you are.

Okay, I'm finished.

THE DEFENDANT:  All right.  Can I just say

I'm a retired cop and I worked for the DA's office.

This is--

THE COURT:  Well, your lack of legal

knowledge is astounding.

THE DEFENDANT:  I only know what they told me

in the academy.

THE COURT:  Your lack of legal knowledge is

astounding.  There are people who don't have your

experience know a lot more than you know based on

what you submitted in these papers.  It is really

total total ignorance.

THE DEFENDANT:  I am not a lawyer.


tm

PROCEEDINGS

THE COURT:  Then don't brag about your
experience.  Because your lack of legal knowledge is
outstanding.

I don't need him to sign it.  I don't want
him to sign it.  He's an expert, he understood what I
said.  He paid attention for a minute.  I don't need
him to sign written warnings.  You understand what I
said, didn't you?

THE DEFENDANT:  Yes, sir.

THE COURT:  No problem then.

THE DEFENDANT:  I don't agree with going --
as long as we have a jury trial, sir, that's all I am
asking for and asking for my pretrial hearings.  And
like you said, you denied them so we go from there.
It will be an appealable thing.

THE COURT:  Exactly.

MR. BROWN:  Can we approach just one minute?

THE COURT:  Yes. I have other cases on.

MR. BROWN:  Yes, just one minute.

(Discussion at the bench.)

MR. BROWN:  June 18th.

THE COURT:  Please, June 18th.  I hope you
listen to what your attorney has to say with an open
mind.

THE DEFENDANT:  As long as we can sit down

tm

PROCEEDINGS

before this.  The last time we met for a
said this has to do with mortgage fraud,
has nothing to do with that.  We never sat
the five months he has been trying to be my
to knock out --

THE COURT:  I hope so.

THE DEFENDANT:  That's all.  If he would like
down and we can talk about what's gonna
that why I am not knowledge about what's
on.  He has not told me anything, that's the
reason why I asked him.

THE COURT:  I want you to concentrate on the
legal aspects of the case, not on the other things
that you've been concentrating on.  I'll see you
June 18th.  Thank you.

(Whereupon, the matter was adjourned to
June 18, 2013 in Part 22.)

*     *     *     *

Certified to be a true and accurate
transcript of the stenographic minutes taken
within.

_____
TERI MALTESE
Senior Court Reporter

tm

```
 1   SUPREME COURT OF THE STATE OF NEW YORK

 2   COUNTY OF KINGS: CRIMINAL TERM:  PART 22
     ------------------------------------------X
 3                                             :
     THE PEOPLE OF THE STATE OF NEW YORK;      :
 4                                             :
                                               :
 5             -against-                       :INDICTMENT NO.
                                               :  0046/2010
 6   DERIC B. NELSON,                          :
                                               :
 7                                             :
                                               :
 8                             DEFENDANT.      :
     ------------------------------------------X
 9                             320 Jay Street
                               Brooklyn, New York
10                             May 15, 2013

11   B E F O R E:      THE HONORABLE JOEL M. GOLDBERG
                          Justice of the Supreme Court
12

13   A P P E A R A N C E S:

14   OFFICE OF CHARLES HYNES, ESQ.
     DISTRICT ATTORNEY - KINGS COUNTY
15   Attorney for the People
            350 Jay Street
16          Brooklyn, New York 11201
     BY:    LIZ KURTZ and RICHARD FARRELL, ESQS.
17             Assistant District Attorneys

18

19   Law Offices of Damien Brown
     Attorney for defendant Nelson
20   26 Court Street - rm 603
            Brooklyn, New York 11201
21   BY:    DAMIEN BROWN, ESQ.

22
                               TERI MALTESE
23                        Senior Court Reporter

24

25
```

PROCEEDINGS

1          (Whereupon, the following takes place

2     on the record in open court in the presence of

3     the Court, the assistant district attorney,

4     defense counsel and Deric Nelson.)

5          COURT CLERK:  Judge, this is calendar number

6     one on the calendar, 0046/2010 Deric Nelson.  First

7     time on in the part, Judge.  Appearances please.

8          MR. BROWN:  Damien Brown for Deric Nelson.

9     Good morning, your Honor.

10         MS. KURTZ:  Office of the District Attorney

11    by Liz Kurtz.  Good morning, your Honor.

12         THE COURT:  Do you want to approach please?

13         (Discussion at the bench.)

14         THE COURT:  I'll be right back, I have to get

15    something from my chambers.

16         (Pause in proceedings.)

17         THE COURT:  All right.  We've had a

18    conference at the bench.  I am new to the case and

19    Mr. Brown is new to the case.  The case was old so

20    what I did is I went through the file and looked at

21    all the notations in the file made by the court to

22    determine if there's any basis for a motion pursuant

23    to CPL 30.30.

24         Under that statute, the People have six

25    months to announce ready for trial and you count that

tm

PROCEEDINGS

 1    in days from the time the action commenced.  And so

 2    six months from the time the action commences could

 3    be a different number of days really depending

 4    whether or not February is in there.  So, it's

 5    generally 182, 183 days of time that the People are

 6    allowed to be not ready for trial and this is going

 7    to be from my notes.  And, of course, it's not

 8    official, but for the record to acquaint everyone

 9    what the situation might be.

10         The action started on December 29, 2009 with

11    the filing of the felony complaint.  Time starts

12    running against the People from then.  The People

13    served a statement of readiness after the indictment

14    was filed on or about February 1, 2010, so that's

15    approximately 32 days of time.  Somebody can start

16    adding.

17         The case was scheduled for arraignment

18    February 18, 2010.  The time from the filing of the

19    statement of readiness to the time the defendant is

20    arraigned is excluded because that's an adjournment

21    by the clerical personnel who put the case on the

22    calendar.  And the defendant was arraigned and the

23    case was adjourned to February 1st for Legal Aid, I

24    think, was representing the defendant at the time.

25         Legal Aid was going to determine whether or

tm

PROCEEDINGS

1      not the defendant was entitled to have free

2      representation and for an oral oral motion for the

3      court to inspect the grand jury minutes.  That time's

4      excluded because that's really motion practice.  The

5      case was adjourned to April 1, 2010.

6           April 1, 2010 a warrant was ordered.  That

7      warrant wasn't vacated until July 19th of 2010 so all

8      that time's excluded.  The case was adjourned to

9      July 23rd for defense counsel to come to court, that

10     time's exclude.  The People don't have to be ready on

11     the day the defendant comes back on a warrant.

12          On July 23rd it was adjourned to

13     August 20th for defendant to retain counsel.  That

14     time's excluded because defendant is without counsel.

15          August 20th, the defendant said he was going

16     to be representing himself.  The case was adjourned

17     to November 12th for court's decision on the grand

18     jury minutes and that time is excluded because that

19     motion was still pending and court hadn't decided it

20     yet.

21          November 12th the defendant filed a pro se

22     motions and then it was adjourned to December 15th

23     for the People to answer so that time's excluded.

24          December 15th it was adjourned again to

25     January 24th for the court's decision on the grand

tm

PROCEEDINGS

jury minutes.  By the way, the People announced ready

at the defendant's arraignment on February 18, 2010.

On January 24th, the case was adjourned to

March 3, 2011 for the court's decision on omnibus

motion, that time's excluded.

On March 3rd it is adjourned to March 14 for

decision.  March 14th it was adjourned on consent to

April 25th to pick a trial date.  On April 25th it

was adjourned to May 23rd according to the notes to

appointment a legal advisor for the defendant since

the defendant was without counsel since he requested

a legal advisor, that time's excluded.

On May 23rd, the People answered not ready

and asked for two weeks, so that's 14 days of charged

time but the court adjourned it to June 17th.  On

June 17th the People answered not ready.  There was

some statement about a death in the family that may

or may not be an exceptional circumstance, but let's

charge the People hypothetically with 10 days to

June 27th.

June 27th Mr. Nicholson, the defendant's

legal advisor at the time said he was not ready.  So

the case was adjourned at defendant's request to

July 18th for hearings only.  I don't even know what

hearings there could possibly be.  But on July 18th

tm

PROCEEDINGS

Mr. Nicholson again answered not ready and the case was adjourned to September 6th, so that's not at the People's request.

Then on September 6th the People answered not ready because a new assistant district attorney was assigned.  The case was adjourned -- well, the People asked for September 19th, that's 13 days, so the court adjourned it to October 4th.  Then on October 4th Mr. Nicholson was on trial.  The court determined there were no hearings needed and the case was adjourned to November 14th.

On November 14th the case was adjourned to December 6th.  There was no notation in the file as to why, that's 22 days, let's hypothetically charge the People with that also.

And that's the last time I see the People being charged with time.  Let me continue.  On December 6th, a warrant was stayed.  The defendant didn't appear.  The case was adjourned to January 9th.  On January 9th, the case was adjourned to January 23rd.  It may have been by consent.  On January 23rd the People answered ready.  The defendant didn't appear, bail was forfeited and a warrant was ordered.

Defendant was picked up on a warrant in March

tm

7

PROCEEDINGS

1    of 2012.  The warrant was vacated.  The case was sent

2    back to Part 50 for March 6th.  On March 6th, medical

3    attention and a 730 exam was ordered for the

4    defendant.  The case adjourned to April 12th.

5        On April 12th, defendant was found not fit to

6    proceed.  The case was adjourned to May 4th.  May 4th

7    the finding came back -- says "unfit." The case was

8    adjourned to May 25th.  May 25th the defendant was

9    not produced.  Case was adjourned to June 1st.  He

10   had been found fit on May 31st.

11       On June 7th, I think by this time the

12   defendant had been incarcerated and he retained an

13   attorney, but I guess that attorney was just

14   representing him to bring a writ of habeas corpus to

15   get him out of jail, that was Miss Florio.

16       THE DEFENDANT:  She was the lawyer.  She

17   didn't do certain things I asked her to do.

18       THE COURT:  All right, that's fine, I'm just

19   going on.  On June 8th, it was adjourned to

20   August 6th for trial.  On August 6th, Miss Florio was

21   not available.  It was adjourned to September 4th.

22   On September 4th the defendant said he was going to

23   discharge Miss Florio and the case was adjourned to

24   October 5th.

25       On October 5th the case was adjourned to

tm

PROCEEDINGS

October 31st.  I guess the defendant still wanted to

get an attorney because on October 31st the defendant

said he was going to retain a new attorney but

Mr. Brown was present then on October 31st and you

know the rest, it's been adjourned on consent since

then, Mr. Brown.

          MR. BROWN:  Yes.

          THE COURT:  So, at most, you have 32 and 14,

I don't want to embarrass myself here is 46 and maybe

10 is 56 and 13 is 69 and 22 is 91.  It's well short

of the 180 plus days.  So, I just don't see a 30.30

motion being possible unless you can find something

over 90 days somewhere in there.

          So, what I'd like to do is discuss with

counsel what the next step will be.  Do you want to

come up please?

          (Discussion at the bench.)

          (Off the record.)

          THE COURT:  For the record, I'm setting a

trial date of June 10th.

          MR. BROWN:  Judge, just to let you know, I

have a Judge Karopkin, I have a departmental trial.

We beat the criminal trial in Queens.

          THE COURT:  When is that?

          MR. BROWN:  June 10th.  It should only be

tm

PROCEEDINGS

about a week, week and a half.  Especially no jury

THE COURT:  Is June 17th, People, right now

doable?

MS. KURTZ:  Your Honor, it is doable except

that I will be out-of-town on June 20th, and 21st.

THE COURT:  Okay, given that we will have the

day June 17th, okay?

THE COURT:  June 17th for trial.  Listen,

please.  I'm going to put this case on for conference

between now and then because hopefully, we might be

able to come to some kind of agreement.  I could say

this:  We discussed the possibility of a nonjury

trial.  If there's a nonjury trial, it doesn't have

to be on consecutive days.  In other words, if

someone has a scheduling issue, something like that,

that could be worked around.

I'll also say this to the parties and we

discussed this at the bench.  The People are offering

the defendant, and it's important, I think, to put

the offers on the record.  If the defendant pleads

guilty to a felony, the sentence recommendation on a

guilty plea would be probation; is that correct?

MS. KURTZ:  That is correct.

THE COURT:  I understand the defendant feels

tm

that legally there was no crime committed because he
may have had legal title to the property, something
like that -- let me finish, let me finish.  If the
defendant waives a jury -- just listen to what I'm
saying.  I could determine it, defendant is presumed
innocent.  The People have to prove guilt beyond a
reasonable doubt not only, of course, legal title be
it defense but proof beyond a reasonable doubt that
defendant had intent to steal it even if you did know
it, okay?

        So these are things maybe the court can
understand perhaps better than a jury, I don't know.
But, if the defendant waives a jury, since the
prosecution is not asking for jail, unless I find out
something about the case that I don't already know, I
would not sentence the defendant to jail if he were
convicted in a nonjury trial.

        So, that's something you can discuss with the
defendant.  I put it on the record.

        MR. BROWN:  Yes, I will discuss that with him
Judge.

        THE COURT:  And if he's convicted at a
nonjury trial he has a right to appeal.  He has a
right to appeal if the record doesn't support you.
So, you should understand that as well.

                        tm

11

PROCEEDINGS

So I will put this case on for conference,
Mr. Brown.  You're starting on trial in front of--

MR. BROWN:  On trial, the third day of
testimony.

THE COURT:  All right.  Let me put this on
for another conference.  How is the week of May 13th?

MR. BROWN:  That's fine.

THE COURT:  Yes.

MR. BROWN:  13th or the 14th is fine.

THE COURT:  People?

MS. KURTZ:  Can we do May 15th?

THE COURT:  May 15th?

MR. BROWN:  That's fine.

THE COURT:  I will put this on for conference
May 15th.  If the defendant wants to bring motions
or whatever it might be that would be the day to have
them, all right?

MR. BROWN:  Judge, my client is asking --
I've explained to him what pretrial hearings are
about--

THE COURT:  Constitutional rights.

MR. BROWN:  Right.  And in this case I
explained to him, but I would like the People to put
on the record that they have--

THE COURT:  No statements.

tm

PROCEEDINGS

MR. BROWN:  No statement that they intend to use --

THE COURT:  There is no out of court identification procedure.  Those are the traditional pretrial hearings. If the defendant thinks property was taken from him, he has to raise that.

MR. BROWN:  Right, and I will sit down with him because I believe from my conversations and my looking at the case, that all of the paperwork was received from the Civil Court where documents were filed as well as civilians in this case who claim, at least by the people or through the people, that they own the house.  That is not our theory obviously, but that there was nothing taken from my client's home.

THE COURT:  Well, they're not going to be introducing it.  If it was taken from his home you would know it.  Let me adjourn this case to May 15th.

MR. BROWN:  Okay.

THE COURT:  All right?  This is at defense request?

MR. BROWN:  Yes, your Honor.

tm

PROCEEDINGS

THE COURT:  May 15th for conference,
June 17th for trial.  All right?  Thank you.

MS. KURTZ:  Thank you, your Honor.

(Whereupon, the matter was adjourned to
May 15, 2013 in Part 22.)

\*       \*       \*       \*

Certified to be a true and accurate
transcript of the stenographic minutes taken
within.

_Teri Maltese_
TERI MALTESE
Senior Court Reporter

tm